ANDERSON, Admr., et al., Appellants,

v.

CSX TRANSPORTATION, INC. et al., Appellees.

[Cite as *Anderson v. CSX Transp., Inc.* (1991), 74 Ohio App.3d 365.]

Court of Appeals of Ohio,
Miami County.

Nos. 90 CA 33, 90 CA 41.

Decided May 30, 1991.

*James J. Gilvary* and *Scott A. King,* for appellants.
*Stephen E. Klein,* for appellee city of Piqua.
*James D. Utrecht,* for appellee CSX Transp., Inc.

GRADY, Judge.

Plaintiffs-appellants Michael Anderson and Karen McDonley, individually and as co-administrators of the estate of Shari Anderson, brought a survivorship and wrongful death action against defendants-appellees CSX Transportation, Inc. ("CSX") and city of Piqua to recover damages arising from an accident in which Anderson died of injuries suffered in a collision with a CSX train at a crossing in the city of Piqua. The trial court granted summary judgment to both appellees. Appellants appeal both decisions. For reasons more fully stated below the summary judgment for the city of Piqua will be affirmed and the summary judgment for CSX will be reversed.

## I

### Facts

On January 5, 1988, at approximately 9:15 p.m., Shari Anderson was driving her car westbound on Garbry Road toward the Garbry Road railroad crossing in Piqua, Ohio. At the same time a train owned by CSX was travelling northbound toward the crossing. The car and train collided, injuring Shari Anderson, who later died of her injuries.

Certain traffic signs and pavement markings were in place to warn drivers of the upcoming railroad crossing. Specifically, there were the standard

railroad "crossbucks," stop bars, yellow advance warning disc signs, and white pavement markings. There were no flashing lights, gates, or any other "active" warning devices at the crossing. It is agreed that just prior to the collision the train was traveling at about forty-five miles per hour and the car was traveling at about twenty-five miles per hour.

We will address the appeal from each summary judgment separately.

## II

### City of Piqua

Appellants maintain that the city of Piqua ("the city") breached its duty to keep Garbry Road "free from nuisance" by not removing mounds of dirt and vegetation situated on land adjacent to Garbry Road and the railroad crossing, when that dirt and vegetation may have obstructed Anderson's view of the oncoming train. The city moved for summary judgment, arguing that it had no duty to abate the "nuisance." The trial court granted the city's motion.

R.C. 723.01 places an obligation on a municipality to keep highways and streets open to afford the public a safe means of travel. A municipality failing to meet that obligation may be liable to users of its highways injured as a result. *Frankhauser v. Mansfield* (1969), 19 Ohio St.2d 102, 48 O.O.2d 103, 249 N.E.2d 789. R.C. 2744.02(B)(3). However, the duty to keep streets and highways open, in repair, and free from nuisance includes only those aspects which affect the physical condition of such roadways and does not extend to adjacent property. *Strunk v. Dayton Power & Light Co.* (1983), 6 Ohio St.3d 429, 6 OBR 473, 453 N.E.2d 604.

In *Sanchez v. Clark Cty.* (1988), 44 Ohio App.3d 97, 541 N.E.2d 471, we held that a county may be liable for failure to remove a nuisance in the form of tree branches growing from a tree on private property into the right-of-way to conceal a stop sign the county was required to install and maintain there. We noted: "An obscured stop sign is as much an impediment to the safe flow of traffic as a malfunctioning traffic light or an obstruction in the road." *Id.* at 99, 541 N.E.2d at 473–474. In *Sanchez*, the omission forming the basis of liability was failure to maintain the stop sign, which was within the scope of the county's responsibility for the physical condition of the roadway. The fact that the source of the nuisance was on adjacent property was immaterial.

In this case there was no contention that the road itself was defective; nor was it asserted that any traffic signals or signs were defective. Moreover, the alleged "obstruction" caused by the weeds and dirt did not conceal the view of the various traffic safety signs and markings in the area.

Furthermore, the condition constituting the alleged nuisance was wholly located on property adjacent to the road.

Based on the foregoing facts, we find that the city had no duty to remove the alleged nuisance. It was not an aspect affecting the physical condition of the roadway. It did not extend onto the road or the appurtenant areas for which the city was responsible. The duty of the city to remove nuisances which render use of the road unsafe does not extend past the berm or shoulder of the road to adjacent property where the defect constituting the "nuisance" was physically and wholly located.

Appellant's assignment of error will be overruled.

### III

### CSX Transportation

Appellants' complaint alleged that CSX owed persons using the crossing a duty to use reasonable care to prevent their injury. It alleges that CSX breached that duty in respect to Shari Anderson by operating its train at an unsafe speed and by failing to install warning devices to give her advance notice that its train was about to cross the intersection. That negligence is alleged to be the proximate cause of the collision, the injuries suffered by Anderson, and the losses to appellant stated in his claim for wrongful death.

The trial court granted summary judgment to CSX upon a finding that federal and state regulations have preempted the common-law duties CSX is alleged to have breached, thus also relieving CSX of any liability to Anderson or appellants.

The doctrine of preemption governs federal and state relations under the Supremacy Clause of Article VI of the United States Constitution. It provides, generally, that in a case of conflict between federal and state law or regulations, the federal controls.

"Pre-emption may be either express or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.' *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 51 L Ed 2d 604 [613], 97 S Ct 1305 [1309] (1977). Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because '[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because 'the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' or because 'the object sought to be obtained by federal law and the character of obligations

imposed by it may reveal the same purpose.' *Rice v. Santa Fe Elevator Corp.* 331 US 218, 230, 91 L Ed 1447 [1459], 67 S Ct 1146 [1152] (1947).

"Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 US 132, 142–143, 10 L Ed 2d 248 [257], 83 S Ct 1210 [1217] (1963), or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' *Hines v. Davidowitz,* 312 US 52, 67, 85 L Ed 581 [587], 61 S Ct 399 [404] (1941). See also *Jones v. Rath Packing Co.* 430 US at 526, 51 L Ed 2d 604 [at 614], 97 S Ct 1305 [at 1310]; *Bethlehem Steel Co. v. New York Labor Relations Bd.* 330 US 767, 773, 91 L Ed 1234 [1245], 67 S Ct 1026 [1030] (1947)." *Fidelity Fed. S. & L. Assn. v. de la Cuesta* (1982), 458 U.S. 141, 152–153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664, 675.

"Federal regulations have no less pre-emptive effect than federal statutes." *Id.* at 153, 102 S.Ct. at 3022, 73 L.Ed.2d at 675. However, there is a presumption against preemption, and the party arguing that state law has been preempted by federal enactment has the burden to show that preemption was intended when the federal law or regulation was enacted. *Metropolitan Life Ins. Co. v. Massachusetts* (1985), 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728; *Silkwood v. Kerr–McGee Corp* (1984), 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443.

In support of its argument for preemption, CSX relies primarily on the Federal Railroad Safety Act of 1970, Section 421 *et seq.*, Title 45, U.S.Code, ("FRSA"), which authorized the United States Secretary of Transportation to establish guidelines for the states to improve the safety of railroad crossings and appropriated funds for the use of the states in implementing those measures. The act also authorized the secretary to adopt safety regulations for trains.

Section 434 of the FRSA provides:

"The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation,

order, or standard, and when not creating an undue burden on interstate commerce."

In response to this charge and to his responsibilities under the Federal Highway Safety Act, Section 401 *et seq.*, Title 23, U.S.Code, the Secretary of Transportation promulgated a manual of traffic control devices for use by the states. Ohio has adopted these regulations in the form of the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways.

Sections 4955.33 of the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways provides:

"Crossbuck signing.

"At all points where its railroad crosses a public road at a common grade, each company shall erect crossbuck signing in accordance with the department of transportation manual for uniform traffic control devices, adopted under section 4511.09 of the Revised Code, to give notice of the proximity of the railroad and warn persons to be on the lookout for the locomotive. Any such signing that has been or is erected in accordance with this section may lawfully be continued in use until it is replaced. A company that neglects or refuses to comply with this section is liable in damages for all injuries that occur to persons or property from such neglect or refusal."

It is undisputed that the crossing was marked as required by this section when the collision between Anderson's vehicle and a CSX train occurred on January 5, 1988.

■ A railroad has a common-law duty to use ordinary care to protect the safety of motorists and to warn them of the fact that its train is crossing or is about to cross an intersection with the roadway on which the motorist is traveling. *Matkovich v. Penn Central Transp. Co.* (1982), 69 Ohio St.2d 210, 23 O.O.3d 224, 431 N.E.2d 652. The measures a railroad must take to meet the duty is a question of fact, and they may include extra-statutory forms of warning. *Id.* at 215, 23 O.O.3d at 227, 431 N.E.2d at 655, modifying prior contrary holdings in *Capelle v. Baltimore & Ohio RR. Co.* (1940), 136 Ohio St. 203, 16 O.O. 215, 24 N.E.2d 822, and *Canterbury v. Pennsylvania RR. Co.* (1952), 158 Ohio St. 68, 48 O.O. 34, 107 N.E.2d 115. Appellants' claim and complaint are predicated on that common-law duty.

■ The FRSA clearly preempts measures by municipalities to regulate railway use, even though the measures concern matters, such as speed of trains, in which local government has a direct interest. *Baltimore & Ohio RR. Co. v. Piqua* (1986), S.D.Ohio case No. C–3–85–312, unreported, 1986 WL 8254. *Johnson v. Southern Ry. Co.* (W.D.N.C.1987), 654 F.Supp. 121. *Sisk v. National RR. Passenger Corp.* (D.Kan., 1986), 647 F.Supp. 861. However,

duties imposed by state law, including the common law of a state, are not wholly preempted. State regulations may continue under Section 434 of the FRSA (a) until a federal regulation governing the same subject matter is adopted, or (b) in the form of a more stringent rule not incompatible with the federal regulation *and* necessary to reduce or eliminate an essentially local safety hazard. In the latter case both elements must be satisfied. Thus, the FRSA does not permit a state to promulgate statewide regulations relating to railroad safety over subject matter on which the Secretary of Transportation has already promulgated a federal rule. *CSX Transp., Inc. v. Pub. Util. Comm.* (C.A.6 1990), 901 F.2d 497. Local application of more stringent rules is not denied the states so long as they are compatible with the purposes and objectives of the FRSA.

■ The parties have each offered extensive analysis employing an abundance of precedent in support of their arguments for and against preemption. None is directly controlling of the facts or law before us. After a complete review, we are persuaded that Ohio's common-law rule is not preempted by the federal and state regulations concerned. Our holding is based on three considerations.

First, the usual tests for preemption of state law by federal law pursuant to the Supremacy Clause do not support a conclusion that Congress intended the FRSA to preempt Ohio's common law. The statute makes no *express* preemption of state law. Also, there is not a sufficient basis for *implied* preemption; though the pattern of regulation indicates a strong federal interest, Section 434 permits other regulation by the states. Lastly, there is no *actual conflict* between regulations requiring the use of crossbucks and permitting speeds up to sixty miles per hour and appellants' argument that reduced speed and additional markers were a reasonable part of appellee's duties to Anderson. Compliance with both requirements is not impossible.

Second, by delegating federal authority to regulate grade crossing safety to the states, Congress demonstrated an intention to employ the body of the law of a state to meet federal regulatory purposes. (In contrast, the FRSA evidenced no intention to permit municipal speed regulations, and they are preempted.) The body of state law thus incorporated into the federal regulatory scheme includes the common law of a state. In Ohio, that common law has held that compliance with grade crossing regulations does not relieve a railroad of liability to private persons injured as a result of negligence. *Matkovich v. Penn Central, supra.*

Third, the safety measures urged by appellants are consistent with the purposes and objectives of the FRSA. If adopted they would improve, rather than detract from, railroad safety. Further, while they may constitute an

exception to the "nationally uniform" pattern of regulation, they would constitute an *ad hoc* exception to that pattern limited to reduction or elimination of an essentially local safety hazard at one crossing and would not be an undue burden on interstate commerce. Neither would an award of damages in tort constitute an undue burden.

■ Appellee CSX also argues that the claim of unsafe speed is preempted by the rules of the Federal Railroad Administration at Section 213 *et seq.*, Title 49, C.F.R. Those rules have been construed to permit CSX to operate its train at sixty miles per hour through this crossing, far in excess of the forty-five to forty-eight miles per hour traveled at the time of the collision. However, those regulations are concerned with track and roadbed condition, train markings, employee rules, inspection, and the like, and do not encompass the duties alleged in the complaint. Enforcement of the common-law duty of CSX to use ordinary care in the operation of its trains by traveling at a lower speed will in no way "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (*Fidelity Fed. v. de la Cuesta, supra,* 458 U.S. at 153, 102 S.Ct. at 3022) or its administrators in enacting those regulations.

Appellants' assignment of error is sustained.

### IV

### Conclusion

The decision of the trial court granting summary judgment to appellee city of Piqua is affirmed.

The decision of the trial court granting summary judgment to appellee CSX Transportation is reversed. The matter will be remanded to the trial court for further proceedings.

*Judgment accordingly.*

WILSON and BROGAN, JJ., concur.