[Cite as *Kill v. CSX Transp.*, 185 Ohio App.3d 291, 2009-Ohio-6871.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### ALLEN COUNTY


KILL,

    APPELLANT and
    CROSS-APPELLEE,                    CASE NO.  1-09-13

    v.

CSX TRANSPORTATION, INC.,

    APPELLEE and
    CROSS-APPELLANT;


ALLEN COUNTY BOARD OF               O P I N I O N
COMMISSIONERS ET AL.,

    APPELLEES.


Appeal from Allen County Common Pleas Court
Trial Court No. CV2007 1001

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:   December 28, 2009


APPEARANCES:

    Henry W. Chamberlain and Paul W. Flowers, for appellant and cross-appellee.

    R. Leland Evans, for appellee and cross-appellant.

Case No. 1-09-13

**ROGERS, Judge.**

{¶1} Plaintiff-appellant and cross-appellee, Michael Kill, by and through his legal guardians, Theodore and Celeste Kill, appeals the judgment of the Court of Common Pleas of Allen County granting summary judgment to defendant-appellee and cross-appellant, CSX Transportation, Inc. ("CSX"), and dismissing his claim for damages resulting from inadequate signalization at a railroad crossing. On appeal, Kill argues that the trial court erred in dismissing his claim on summary judgment on the grounds that the Federal Railroad Safety Act ("FRSA"), Section 20106, Title 49, U.S.Code, preempts his state-law claim. Additionally, CSX cross-appeals the trial court's refusal to dismiss Kill's punitive-damages claim. On appeal, CSX argues that the trial court erred in not dismissing the punitive-damages claim after its dismissal of the inadequate-signalization claim, as a claim for punitive damages cannot exist independently of its underlying claim. Based on the following, we affirm in part and reverse in part the judgment of the trial court.

{¶2} In September 2007, Kill filed a complaint against CSX, three employees of CSX, the Allen County Board of Commissioners, and ten unnamed defendants for economic and noneconomic losses suffered when he collided with a CSX train while attempting to cross a railroad track in rural Allen County, Ohio, resulting in severe and debilitating brain injuries. The multiple claims in the

-2-

complaint included a negligence claim against CSX for failing to properly sound the horn at the railroad crossing, for speeding, and for failing to remedy a hazardous condition and provide adequate warning devices at the railroad crossing. Additionally, Kill requested punitive damages as a result of CSX's willful and wanton misconduct.

{¶3} In August 2008, the trial court entered a stipulation and order, pursuant to the agreement of the parties, in which Kill dismissed all defendants except CSX and dismissed all claims against CSX, with prejudice, except his claim for "inadequate crossing protection devices." Subsequently, Kill filed an amended complaint, stating that CSX "failed to provide adequate warning devices at the crossing" and that "CSX failed to take precautionary steps such as: placing automatic gates and lights."

{¶4} In October 2008, the trial court entered an agreed scheduling order granting the parties' requests to file motions for and against summary judgment on the sole issue of whether Kill's state-law claim for inadequate signalization was preempted by federal law.

{¶5} Subsequently, CSX filed its motion for summary judgment, asserting that Kill's state-law claim for inadequate warning devices at the railroad crossing was preempted by federal law pursuant to the FRSA, and that Kill was not entitled to punitive damages, because CSX had exercised reasonable care in maintaining

adequate signalization at the railroad crossing and did not engage in willful and wanton misconduct.

{¶6} In December 2008, Kill filed his brief in opposition to CSX's motion for summary judgment, asserting that his state-law inadequate-signalization claim was not preempted by the FRSA because it met the preemption exceptions contained in the statute and because the 2007 amendment to the FRSA clearly excluded preemption under the facts of this case.

{¶7} In February 2009, the trial court granted CSX's motion for summary judgment, dismissing Kill's state-law inadequate-signalization claim based on a finding that the claim was preempted by federal law pursuant to the FRSA. The trial court stated:

> Even though it is not relevant to the disposition herein, the facts reveal that eyewitnesses by affidavit and deposition verify that the CSX train horn was sounding loudly and clearly; that the train could be seen approaching the intersection with its lights on; and that Michael Kill made no attempt to stop his vehicle, thereby running into the side of the lead locomotive as indicated previously.
>
> The crossing in question contained only passive warning devices, namely two standard cross bucks, one facing south and one facing north. Further, as part of the discussion herein, the south-facing cross buck which was facing the direction of Plaintiff's approach, was missing the reflectorized tape with which it was installed.
>
> By agreement of the parties, the issue before the court is whether CSX failed to provide adequate warning devices at the crossing. Said another way, Plaintiff's claim is based upon whether alleged inadequate warning devices at the crossing * * * is [sic] preempted by federal law, specifically the Federal Railroad Safety Act of 1970.

* * *

The Court finds after review that the case of Norfolk Southern Railroad Company v. Shankland [sic] (2000), 529 U.S. 344 is dispositive. Further, the Court finds that in Fifth Third Bank v. CSX Corp. (N.D. Ind. 2004) 306 F. Supp.2d 841, the court cited Shankland [sic] for the proposition "that changes in conditions at the crossing are immaterial to the issue of federal preemption." * * *

* * *

The Court also finds that Plaintiff can not avoid preemption under Section 20106(a)(2)(A)-(C) since Plaintiff fails to identify an essentially local safety hazard as required by said Section.

Finally, the Court finds that none of the exceptions in the federal preemption statutes or its Clarification Amendment applies [sic] to Plaintiff's State Law Inadequate Signalization Claim.

### Plaintiff's Punitive Damage Claim

Even though the Defendant has addressed the punitive damage claim, the Court finds that the only issue before the Court, by agreement, is the federal preemption claim, which may make all other claims moot. Therefore, the Court will not address the same at this point.

**{¶8}** It is from this judgment that Kill appeals and CSX cross-appeals, presenting the following assignment of error and cross-assignment of error for our review.

### Kill's Assignment of Error

The trial court erred, as a matter of law, in granting summary judgment in favor of defendant-appellee on the grounds that all available Ohio common law theories of recovery are barred by federal preemption.

*CSX's Cross-Assignment of Error*

The trial court erred in failing to dismiss cross-appellees' claim for punitive damages as being moot and in failing to dismiss this case in its entirety once it granted summary judgment on the sole underlying claim upon which the claim for punitive damages was based.

*Kill's Assignment of Error*

{¶9} In Kill's assignment of error, he asserts that the trial court erred in dismissing his state-law claim for inadequate signalization on the grounds that it was preempted by federal law pursuant to the FRSA. Specifically, Kill argues that the 2007 amendment to the FRSA under Section 20106(b)(1), Title 49, U.S.Code, providing preemption exceptions, substantially eroded prior case law and statutory authority for preemption of state-law claims; that CSX was in violation of a state law that meets the original preemption savings clause of Section 20106(a)(2); and that he meets the exceptions for preemption under Section 20106(b)(1), because CSX failed to comply with a federal regulation by neglecting to install automatic gates and flashing light signals at the railroad crossing after repeated accidents and failed to comply with its own rule by neglecting to repair the missing reflective tape on the crossbuck at the railroad crossing.

{¶10} As a preliminary matter, we note that Kill asserts in his brief that subsumed within his inadequate-signalization claim is a claim for failure to adequately maintain the crossing, specifically a failure to replace the missing

reflectorized tape on the crossbuck. However, the trial court's August 2008 stipulation and order, and Kill's amended complaint, only maintain an inadequate-signalization claim. Kill dismissed all other claims that were contained within his first complaint, including his claim for improper maintenance. Accordingly, the only claim properly before this court is an inadequate-signalization claim.

## I. Standard of Review

**{¶11}** An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court used different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 222. Summary judgment is appropriate when, looking at the evidence as a whole, (1) there is no genuine issue as to any material fact, (2) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made; and, therefore, (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686-687. If any doubts exist, the issue must be

resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358-359.

**{¶12}** The party moving for summary judgment has the initial burden of producing some evidence that demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293. In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record that affirmatively support his argument. Id. at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. Id.; Civ.R. 56(E).

*II. Federal Railroad Safety Act and Preemption of State-Law Claims*

**{¶13}** The FRSA, Section 20101 et seq., Title 49, U.S.Code, was enacted by Congress in 1970 and granted the Secretary of Transportation "the authority to 'prescribe regulations and issue orders for every area of railroad safety,' * * * and * * * to 'maintain a coordinated effort to develop and carry out solutions to the railroad grade crossing problem.'" *Norfolk S. Ry. Co. v. Shanklin* (2000), 529 U.S. 344, 347, quoting Sections 20103(a) and 20134(a), Title 49, U.S.Code. Contained within the FRSA is a preemption provision:

(a) National uniformity of regulation.

(1)  Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.

(2)  A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement.  A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order--

(A)  is necessary to eliminate or reduce an essentially local safety or security hazard;

(B)  is not incompatible with a law, regulation, or order of the United States Government; and

(C)  does not unreasonably burden interstate commerce.

Section 20106(a), Title 49, U.S.Code.  Accordingly, under this provision, all state-law claims are preempted when either the Secretary of Transportation or the Secretary of Homeland Security promulgates a regulation that covers the subject matter of the state law, unless the three preemption-avoiding conditions are satisfied.  See *In re Miamisburg Train Derailment Litigation* (1994), 68 Ohio St.3d 255, 257; *Wooten v. CSX RR.,* 164 Ohio App.3d 428, 2005-Ohio-6252, ¶ 14-15, citing *CSX Transp., Inc., v. Easterwood* (1993),  507 U.S. 658.

{¶14} Subsequent to the passage of the FRSA, Congress created the Federal Railway-Highway Crossings Program ("crossings program") through the

Highway Safety Act of 1973, found in Section 401 et seq., Title 23, U.S.Code.

The crossings program provided funds to states for the "cost of construction of

projects for the elimination of hazards of railway-highway crossings." Section

130(a), Title 23, U.S.Code. The Secretary of Transportation, through the Federal

Highway Administration, issued regulations to implement the crossings program.

*Shanklin*, 529 U.S. at 348. Of the multiple regulations issued, one addresses the

warning devices to be installed at railroad crossings. See Section 646.214(b), Title

23, C.F.R. The regulation provides:

> (2) Pursuant to 23 U.S.C. 109(e), where a railroad-highway grade crossing is located within the limits of or near the terminus of a Federal-aid highway project for construction of a new highway or improvement of the existing roadway, the crossing shall not be opened for unrestricted use by traffic or the project accepted by FHWA until adequate warning devices for the crossing are installed and functioning properly.

> (3)(i) Adequate warning devices, under § 646.214(b)(2) or on any project where Federal-aid funds participate in the installation of the devices are to include automatic gates with flashing light signals when one or more of the following conditions exist:

> (A)  Multiple main line railroad tracks.

> (B)  Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.

> (C) High Speed train operation combined with limited sight distance at either single or multiple track crossings.

> (D)  A combination of high speeds and moderately high volumes of highway and railroad traffic.

(E) Either a high volume of vehicular traffic, high number of train movements, substantial numbers of schoolbuses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions.

(F) A diagnostic team recommends them.

(ii) In individual cases where a diagnostic team justifies that gates are not appropriate, FHWA may find that the above requirements are not applicable.

(4) For crossings where the requirements of § 646.214(b)(3) are not applicable, the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of FHWA.

Section 646.214(b), Title 23, C.F.R. Pursuant to this regulation, when federal funds have been used to install the warning devices, those devices must include automatic gates and flashing light signals if any of the conditions in Sections 646.214(b)(3)(i)(A) and (F) exist; however, even if no conditions under subsections (b)(3)(i)(A) and (F) are present, subsection (b)(4) requires the type of device installed to be approved by the Federal Highway Administration. *Shanklin*, 529 U.S. at 354, citing *Easterwood,* 507 U.S. at 670-671. See also *Nye v. CSX Transp.* (C.A.6, 2006), 437 F.3d 556, 561-562; *Henning v. Union Pacific RR. Co.* (C.A.10, 2008), 530 F.3d 1206, 1212-1213.

{¶15} Accordingly, because federal preemption of state law occurs when "federal regulations substantially subsume the subject matter of the relevant state law," *Easterwood*, 507 U.S. at 664, and because the regulations under Section

646.214(b)(3) and (4), Title 23, C.F.R. encompass the subject matter of a tort claim pertaining to the adequacy of railroad crossing warning signals, the United States Supreme Court in *Easterwood* and *Shanklin* found that Section 20106(a), Title 49, U.S.Code preempts state-law inadequate-signalization claims when federal funding was used to install the railroad crossing warning devices, and, consequently, the regulations under Section 646.214(b)(3) and (4), Title 23, C.F.R. applied:

> Because [Section 646.214(b)(3) and (4), Title 23, C.F.R.] "establish requirements as to the installation of particular warning devices," we held that "when they are applicable, state tort law is pre-empted." [*Easterwood,* 507 U.S. at 670.] Unlike the other regulations, "§§ 646.214(b)(3) and (4) displace state and private decisionmaking authority by establishing a federal-law requirement that certain protective devices be installed or federal approval obtained." As a result, those regulations "effectively set the terms under which railroads are to participate in the improvement of crossings."

*Shanklin*, 529 U.S. at 352-353. See also *Nye*, 437 F.3d at 561-562; *Lee v. Burlington N. Santa Fe Ry. Co.* (C.A.9, 2001)*,* 245 F.3d 1102, 1106; *Strozyk v. Norfolk S. Corp*. (C.A.3, 2004), 358 F.3d 268, 273-274.

{¶16} Furthermore, this court has previously found, pursuant to *Easterwood*, that federal preemption of a state-law inadequate-signalization claim occurs when federal funds were used to purchase the warning device, the warning device was actually installed, and the warning device was approved by the Federal

Case No. 1-09-13

Highway Administration. *Gollihue v. Consol. Rail Corp.* (1997), 120 Ohio App.3d 378, 397

{¶17} Subsequently, in 2007, Congress amended the FRSA pursuant to the Implementing Recommendations of the 9/11 Commission Act of 2007. See Pub.L. No. 110-53, 121 Stat. 266. Pursuant to this act, the following language was added to Section 20106, Title 49, U.S.Code:

> (b) Clarification regarding State law causes of action.--(1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party--
>
> (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;
>
> (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or
>
> (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).
>
> (2) This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002.

Although subsection (b) was added to Section 20106, subsection (a) was left unchanged. Furthermore, the amendment was made retroactive to January 18,

-13-

2002. The impact of the amendment and its purpose were discussed in the House conference report as follows:

> Subpart (a) of the Conference substitute * * * contains the exact text of 49 U.S.C. §20106 as it existed prior to enactment of this Act. It is restructured for clarification purposes; however, *the restructuring is not intended to indicate any substantive change in the meaning of the provision.*
>
> Subpart (b) of the Conference substitute provides further clarification of the intention of 49 U.S.C. §20106, as it was enacted in the Federal Railroad Safety Act of 1970, to explain what State law causes of action for personal injury, death, or property damage are not preempted.

(Emphasis added). H.R. Conf. Rep. No. 110-259, At 351 (2007). Furthermore, the history behind the amendment and its reasoning have been discussed in detail by several courts:

> Subsection (b) was enacted in response to and to "rectify" the Federal court decisions in *Mehl v. Canadian Pac. Ry. Ltd.,* 417 F.Supp.2d 1104 (D.N.D.2006) and *Lundeen v. Canadian Pac. Ry. Co.,* 447 F.3d 606 (8th Cir.2006). In both cases, the courts concluded state law negligence claims were preempted by FRSA even though defendant railroads failed to comply with the applicable federal regulation or rule. *See Mehl,* 417 F.Supp.2d at 1108; *Lundeen,* 447 F.3d at 611. These decisions raised great concern among Congressional members who believed denying accident victims legal recourse even when the railroad violated applicable federal regulations was inconsistent with FRSA. As a result, Congress amended FRSA's preemption clause by allowing state tort law claims to proceed if a railroad did not comply with a railroad safety federal regulation even if such regulation covered the subject matter of the state requirement.

*Murrell v. Union Pacific RR. Co.* (D.Ore.2008), 544 F.Supp.2d 1138, 1145.

> *Mehl* and *Lundeen* brought to light an erroneous interpretation of FRSA preemption not supported by the text of § 20106, *Easterwood,* or *Shanklin.* Thereafter, Congress amended 49 U.S.C. § 20106 by adding the clarification amendment, making clear that when a party alleges a railway *failed to comply* with a federal standard of care established by regulation or with its own plan, rule, or standard created pursuant to a federal regulation, preemption will not apply. 49 U.S.C. § 20106(b)(1).

*Henning*, 530 F.3d at 1212-1213. See also *Bates v. Missouri & N. Arkansas RR. Co.* (C.A.8, 2008), 548 F.3d 634, 637.

### III. Analysis

#### A.    Preemption under Easterwood *and* Shanklin

{¶18} In the case at bar, Kill sets forth multiple arguments in support of his assignment of error that the trial court erred in dismissing his inadequate-signalization claim against CSX on the grounds that his claim was preempted by the FRSA. First, he contends that the trial court erred in relying upon the preemption analysis set forth under *Easterwood* and *Shanklin*, as the 2007 amendment to the FRSA substantially eroded the precedential value of that analysis so that it now has little application to the facts of this case.

{¶19} However, in analyzing the 2007 amendment to the FRSA, we find that it does little to alter the preemption analysis set forth under *Easterwood* and *Shanklin,* other than to provide additional exceptions to preemption. First, the amendment did not alter the original language of Section 20106(a), Title 49,

U.S.Code. This was the language relied upon by *Easterwood* and *Shanklin*, and it remains unchanged.

**{¶20}** Second, the House Conference Report on the 2007 amendment clearly states that the amendment was not intended to effect "any substantive change in the meaning of the provision," but was meant to "provide[] further clarification of the intention of 49 U.S.C. §20106." H.R. Conf. Rep. No. 110-259, at 351 (2007).

**{¶21}** Third, the language introduced by the 2007 amendment does not bear upon the reasons for preemption set forth under *Easterwood* and *Shanklin*. The Supreme Court stated in *Shanklin* that the plaintiff's state-law inadequate-signalization claim was preempted because Section 646.214(b)(3) and (4), Title 23, C.F.R. either mandated the installation of specific warning devices or required the warning devices to be approved by the Federal Highway Administration, thereby " 'subsum[ing] the subject matter of the relevant state law' " and preempting the plaintiff's claim. *Shanklin*, 529 U.S. at 352, quoting *Easterwood*, 507 U.S. at 664. The additional statutory language of Section 20106(b), Title 49, U.S.Code does not alter the warning-device requirements of Section 646.214(b)(3) and (4), Title 23, C.F.R., but only provides exceptions for preemption, even when those warning-device requirements are applicable. Accordingly, even after the 2007 amendment, the warning-device requirements of Section 646.214(b)(3) and

(4) still "subsume the subject matter of the relevant state law." *Easterwood*, 507 U.S. at 664. "[I]f Congress intend[ed] for [this] legislation to change the interpretation of a judicially created concept, it [would make] that intent specific," *Midlantic Natl. Bank v. New Jersey Dept. of Environmental Protection* (1986)*, 474 U.S. 494, 501, but Section 646.214(b)(3) and (4), Title 23, C.F.R. still indicates federal preemption.

{¶22} Finally, other courts that have considered the effect of the 2007 amendment to Section 20106, Title 49, U.S.Code have also concluded that it has no effect on the precedential value of the preemption analysis set forth under *Easterwood* and *Shanklin*. See *Henning*, 530 F.3d at 1216 ("Congress did not overrule *Shanklin,* but instead provided clarification for courts interpreting *Shanklin*"); *Murrell*, 544 F.Supp.2d at 1152-1153 ("Upon finding that *Shanklin* was not overruled by Congress' clarification to section 20106, I now hold plaintiff's inadequate warning devices claim is preempted by federal law"); and *Gauthier v. Union Pacific RR. Co.*, E.D.Tex. No. 1:07CV12, 2009 WL 812261 ("After the amendment of Section 20106(b), the familiar preemption analysis of [*Easterwood* and *Shanklin*] and their progeny is applied to allegations of state law negligence, unless [the exceptions of Section 20106(b), Title 49, U.S.Code apply]").

{¶23} Accordingly, because we find that the 2007 amendment to the FRSA does not alter the preemption analysis set forth under *Easterwood* and *Shanklin*, we will apply that analysis to the facts of the case before us.

{¶24} Attached to CSX's motion for summary judgment was an affidavit and exhibits establishing that two standard crossbucks were installed at this railroad crossing in 1993 through the Ohio Crossbuck Program, pursuant to the approval granted by the United States Department of Transportation, Federal Highway Administration. Additionally, the affidavit and exhibits establish that these crossbucks were installed using only federal funds. Moreover, Kill presented no evidence contradicting these facts in his motion for summary judgment. Accordingly, because these warning devices were installed using federal funds, the requirements of Section 646.214(b)(3) and (4), Title 23, C.F.R. applied. Because it was not alleged that at the time of installation of these warning devices, any of the conditions found in Section 646.214(b)(3)(i)(A) through (F) were present to necessitate the furnishing of flashing lights and automatic gates, only the requirement of Section 646.214(b)(4) applied, and this requirement was met when the Federal Highway Administration approved the installation of the crossbucks. Consequently, Section 646.214(b)(3) and (4), Title 23, C.F.R. "effectively set the terms under which [CSX was] to participate in the improvement of crossings" and "displace[d] state and private decisionmaking [sic]

authority," *Easterwood*, 507 U.S. at 670, thereby preempting Kill's state-law inadequate-signalization claim relating to this railroad crossing.

*B. Exceptions to Preemption*

**{¶25}** Even though we have found Kill's inadequate-signalization claim to be preempted, we must still decide whether the facts support any of the exceptions for preemption contained under Section 20106, Title 49, U.S.Code. Specifically, Kill argues that his inadequate-signalization claim is not preempted because CSX was in violation of a federal standard of care pursuant to Section 20106(b)(1)(A), Title 49, U.S.Code; because CSX was in violation of its own rule created pursuant to a federal regulation, as stated in Section 20106(b)(1)(B); and because the three conditions necessary for an exemption from preemption under Section 20106(a)(2) were present.

*1. Failure to Comply with a Federal Standard of Care*

**{¶26}** Section 20106(b)(1)(A), Title 49, U.S.Code provides an exception to preemption where the railroad company "has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation." Here, Kill asserts that because this railroad crossing has experienced multiple car and train collisions over the last several years, it meets

the requirements for the installation of flashing lights and automatic gates pursuant to Section 646.214(b)(3)(i)(e), Title 23, C.F.R., and because CSX failed to install these warning signals, it failed to comply with a federal standard of care and preemption does not apply.

{¶27} However, Section 646.214(b)(3), Title 23, C.F.R. does not establish a standard of care, but, instead, sets forth affirmative requirements that must be met when certain conditions exist, thereby eliminating the railroad's discretion in its decision to install an adequate warning system. See *Henning*, 530 F.3d at 1215 ("It is apparent that § 646.214(b)(3) and (4) [Title 23, C.F.R.] do not establish a federal standard of care under which a railroad must act"); *Shanklin*, 529 U.S. at 353-354, quoting *Easterwood*, 507 U.S. at 670 ("Unlike the other regulations, '§§ 646.214(b)(3) and (4) [Title 23, C.F.R.] displace state and private decisionmaking authority by establishing a federal-law requirement that certain protective devices be installed or federal approval obtained'").

{¶28} Accordingly, because Section 646.214(b)(3), Title 23, C.F.R. does not establish a standard of care under which CSX was required to operate, Section 20106(b)(1)(A), Title 49, U.S.Code does not operate to permit Kill's state-law inadequate-signalization claim.

### 2. Failure to Comply with its Own Rule

{¶29} Section 20106(b)(1)(B), Title 49, U.S.Code provides a second exception to federal preemption. The statute provides that a state-law claim will survive preemption when the railroad "has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries." Here, Kill argues that CSX failed to comply with its own rule to keep the crossbuck in repair pursuant to its contractual agreement with the state of Ohio when it failed to replace the reflectorized tape that deteriorated off the crossbuck. In support of his argument, Kill cites the agreement between CSX and the state of Ohio for installation of the crossbuck. Section eight of that agreement states that CSX, "at its cost and expense, shall own said crossbuck signs and maintain them in good condition, as required by statute."

{¶30} Although CSX contractually agreed to maintain the crossbuck, this is not the equivalent of a "plan, rule, or standard * * * created pursuant to a regulation." First, CSX's obligation to maintain the crossbuck was not created pursuant to a regulation but pursuant to the contract. Second, in looking at the legislative history of Section 20106(b)(1)(B), Title 49, U.S.Code, it is clear that this contractual agreement was not the type of rule or plan contemplated by the statute.

{¶31} The House of Representatives Conference Report on the 2007 amendment to Section 20106, Title 49, U.S.Code states that the amendment was

intended to "clarify the intent and interpretations of the existing preemption statute and to rectify the Federal court decisions related to the Minot, North Dakota accident that are in conflict with precedent." H.R. Conf. Rep. No. 110-259, at 351 (2007).

{¶32} The federal court decisions to which the conference report refers are *Mehl v. Canadian Pacific Ry. Ltd.* (D.N.D.2006), 417 F.Supp.2d 1104 and *Lundeen v. Canadian Pacific Ry. Co.* (C.A.8, 2006), 447 F.3d 606. See *Henning*, 530 F.3d at 1212-1213. In *Lundeen*, the Eighth Circuit determined that the plaintiff's negligent-inspection claim for damages as a result of a train derailment was preempted even though it was alleged that the railroad failed to comply with the federal regulations related to inspection. In *Mehl*, the federal district court also found that plaintiff's negligent-inspection claims were preempted despite the plaintiff's argument that the railroad failed to comply with the inspection regulations under federal law.

{¶33} In looking at these two cases with which Congress was concerned when drafting the 2007 amendment to Section 20106, Title 49, U.S.Code, it is clear that the exception contained in Section 20106(b)(1)(B) directly concerns plans or rules that specifically relate to federal requirements. Here, any plan or rule that CSX was required to follow in replacing the reflectorized tape arose from its contractual agreement with the state of Ohio, not a federal regulation. Kill cites

to no other federal regulation or requirement that CSX was required to follow in replacing the reflectorized tape.

{¶34} However, even if Kill was able to cite a federal regulation requiring CSX to maintain the crossbucks by repairing any reflectorized tape, we would still find his claim to be barred, as that claim would be a failure to adequately maintain the railroad crossing, and Kill dismissed this and all other claims in his amended complaint, except for the inadequate-signalization claim.

{¶35} Accordingly, we find that Kill is unable to show the applicability of the preemption exception contained in Section 20106(b)(1)(B), Title 49, U.S.Code.

### 3. Preemption Savings Clause of Section 20106(a)(2), Title 49, U.S.Code

{¶36} Section 20106(a)(2) was unaltered by the 2007 amendment to the FRSA and provides that a state law will be excluded from preemption when the law "is necessary to eliminate or reduce an essentially local safety or security hazard; is not incompatible with a law, regulation, or order of the United States Government; and does not unreasonably burden interstate commerce." Section 20106(a)(2)(A) through (C), Title 49, U.S.Code. Here, Kill argues that he meets all three prongs of this preemption savings clause. He asserts that, under Ohio common law, railroads have a duty to exercise reasonable care to protect the safety of motorists at railroad crossings, which, under the conditions existing at this

crossing, required the installation of automatic gates and flashing lights. Kill claims that this duty to exercise reasonable care is necessary to reduce a local safety hazard, as there has been a high number of accidents at this railroad crossing; that this duty is not incompatible with a federal law or regulation, as this common-law standard for the placement of automatic gates and flashing lights closely mirrors the federal standard contained in Section 646.214(b)(3), Title 23, C.F.R.; and that this common-law standard would not unduly burden interstate commerce, as evidenced by the fact that this railroad crossing has been recently upgraded with gates and flashing lights.

{¶37} Ohio common law requires that a railroad exercise reasonable care in protecting motorists from and warning them of trains approaching a highway crossing. *Carpenter v. Consol. Rail Corp.* (1994), 69 Ohio St.3d 259, 263, citing *Matkovich v. Penn Cent. Transp. Co.* (1982), 69 Ohio St.2d 210. Under some conditions, this duty to exercise reasonable care could require the installation of flashing lights and automatic gates. See id.; *Anderson v. CSX Transp., Inc.* (1991), 74 Ohio App.3d 365, 372.

{¶38} A local safety hazard is a "'local situation[] which [is] not statewide in character and not capable of being adequately encompassed within national uniform standards.'" *Duluth, Winnipeg, & Pacific Ry. Co. v. Orr* (C.A.8, 2008), 529 F.3d 794, 798, quoting *Natl. Assn. of Regulatory Util. Commrs. v. Coleman*

-24-

(C.A.3, 1976)*,* 542 F.2d 11, 14-15.  To ascertain if a safety hazard is essentially local in nature, we must "inquire into the nature of the hazard itself to determine whether it is the type of hazard that is properly dealt with on a local level."  *Union Pacific RR. Co. v. California Pub. Util. Comm.* (C.A.9, 2003), 346 F.3d 851, 860, citing *Burlington N. & Santa Fe Ry. Co. v. Doyle* (C.A.7, 1999)*,* 186 F.3d 790, 795.

{¶39} In determining what constitutes an essentially local safety hazard, courts have found that an abnormally high accident rate alone does not justify such a finding.  See *Murrell*, 544 F.Supp.2d at 1156-1157.  The frequency of accidents only serves as evidence of an existence of a hazard, not "the nature of the hazard itself."  *Union Pacific RR. Co.,* 346 F.3d at 861 (finding that a high derailment rate alone does not establish an essentially local safety hazard).

{¶40} Consequently, because Kill contends that an essentially local safety hazard exists solely based upon the frequency of accidents, he is unable to establish the presence of a local safety hazard at this railroad crossing, and we find that he fails to meet the first prong of the preemption savings clause of Section 20106(a)(2)(A), Title 49, U.S.Code.  It is unnecessary to examine the remaining two prongs.

{¶41} Accordingly, because we find that the 2007 amendment to the FRSA did not alter the preemption analysis of *Easterwood* and *Shanklin*; that Kill's state-

law inadequate-signalization claim is preempted by the FRSA; that Kill does not meet the preemption exceptions contained in Section 20106(b)(1)(A) through (B), Title 49, U.S.Code; and that Kill fails to meet the requirements of the preemption savings clause of Section 20106(a)(2)(A) through (C), we find that the trial court did not err in granting summary judgment to CSX, thereby dismissing his inadequate-signalization claim.

{¶42} Accordingly, we overrule Kill's assignment of error.

*CSX's Cross-Assignment of Error*

{¶43} In its cross-assignment of error, CSX asserts that the trial court erred in failing to dismiss Kill's punitive-damage claim after dismissing his state-law claim for inadequate signalization. Specifically, CSX asserts that because a punitive-damages claim cannot exist independently of the underlying claim, the trial court was required to dismiss Kill's punitive-damages claim when it dismissed his underlying claim for inadequate signalization. We agree.

{¶44} It is well established that a claim for punitive damages cannot exist independently of the underlying cause of action for which it is sought. *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 649, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77. "[A] civil action may not be maintained simply for punitive damages, but, rather punitive damages are awarded as mere

incident to the cause of action in which they are sought." *Miller v. Xenia* (Mar. 22, 2002), 2d Dist. No. 2001 CA 82.

{¶45} In the case sub judice, Kill filed an amended complaint setting forth only a claim for inadequate signalization and a claim for punitive damages. The trial court subsequently dismissed the inadequate-signalization claim on summary judgment, but left the punitive-damages claim undecided.

> Even though the Defendant has addressed the punitive damage claim, the Court finds that the only issue before the Court, by agreement, is the federal preemption claim, which may make all other claims moot. Therefore, the Court will not address the same at this point.

### CONCLUSION

> The Court finds that Defendant's Motion for Summary Judgment is well taken in that there are no genuine issues as to any material facts and as a matter of law Plaintiff's claims are barred by federal preemption.

> This is a final judgment as to one but fewer than all of the claims[1] and the Court makes an expressed determination pursuant to Civ.R. 54(B) that there is no just reason for delay.

{¶46} Consequently, because a punitive-damages claim cannot exist independently of the underlying claim for which it was brought, we find that Kill's claim for punitive damages cannot survive the dismissal of his underlying inadequate signalization claim and that the trial court erred in failing to dismiss the punitive-damages claim.

{¶47} Accordingly, we sustain CSX's cross-assignment of error.

{¶48} Having found no error prejudicial to the appellant and cross-appellee in the particulars assigned and argued in his assignment of error, but having found error prejudicial to the appellee and cross-appellant in the particulars assigned and argued in its cross-assignment of error, we affirm in part and reverse in part, and we remand the cause to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

PRESTON, P.J., and WILLAMOWSKI, J., concur.

---

[1] We note that the trial court was referring only to the punitive-damages claim, as no other claims remained.