OPINION
{¶ 1} Plaintiff-appellant, Gary Rigdon, appeals a decision of the Butler County Court of Common Pleas granting summary judgment to defendant-appellee, Great Miami Valley YMCA ("YMCA"), in a negligence action filed by appellant for injuries he sustained while closing a racquetball court door.
 {¶ 2} On March 11, 2003, appellant arranged to play racquetball at the YMCA's Fairfield branch ("Fairfield Y") with Charles Fisher, William Burkhart, and David Flexner. *Page 2 
Appellant was a member of the Countryside Y in Lebanon, Ohio, and as such had privileges to use the Fairfield Y facility. The racquetball courts at the Fairfield Y were installed in 1979. Each racquetball court has a door with a viewing window in the top center of the door. Although it appears the racquetball court door at issue had a doorknob at one time, it was long ago removed, and there has been no doorknob on the outside of the door within the memory of the YMCA's employees. The door was designed to be pushed open into the court by those entering the court, and then pushed closed by the players inside the court. Players inside the court could open the door by pulling a flush-mounted ring on the court side of the door. If no one was using the court, the door would stay ajar.
 {¶ 3} By the time appellant and Burkhart arrived at the Fairfield Y, Fisher and Flexner were already warming up in a racquetball court. Appellant and Burkhart proceeded to the racquetball courts. Appellant knew where they were because he had played racquetball on those courts three months before. Upon seeing Fisher and Flexner warming up through the door's window, appellant tapped on the door to get their attention. The door opened partially. Appellant stuck his head into the court and spoke briefly to the two men. He then stepped out of the doorway and may have attempted to close the door by grabbing the window frame. However, the door did not close. Appellant then wrapped his right hand around the edge of the door, his fingertips facing the inside of the court, and closed the door. Appellant intended to exert enough force to close the door and then pull his fingers out at the last minute before the door closed on them.
 {¶ 4} As he closed the door, appellant did not pull his fingers out in time. As a result, his right middle finger was caught in the door causing the top of his finger to be sliced off. Appellant was taken to the hospital where part of his fingertip was reattached and skin from the remainder was used to cover the hole. In his deposition, appellant stated that when he was talking to Fisher and Flexner, "[he] only noticed that the edges [of the door] were *Page 3 
extremely sharp in accordance with the other courts. These were metal doors. All of the other doors, all of the other courts I played were either wood and sort of a beveled edge. So that's the only thing that I might have noticed, and they didn't have handles or anything on them."
 {¶ 5} Appellant filed a complaint against the YMCA alleging, inter alia, negligence. A certified door consultant retained as an expert witness by appellant stated in his report that (1) the pressure of closing the door against the frame was similar to a guillotine on appellant's finger, (2) because there was no grip, knob, or ring on the outside of the door, once the door was open there was no way to close the door except by wrapping a hand or fingers around the edge of the door and pulling it toward oneself, (3) the door window was "not conducive nor capable of being held for a gripping location," (4) the sharp edges of the plastic laminate covering the door acted as the cutting edge, and (5) there was no directional or safety signage on how to operate the door, such as "Do not close door from the exterior," or "Danger or Caution — closing door by hand can cause injuries."
 {¶ 6} The YMCA moved for summary judgment. Attached to the motion was a report from Dennis Williams, an expert witness for the YMCA. In his report, Williams stated that (1 ) the racquetball courts were constructed exactly as specified on the drawings, such construction being standard in the industry for racquetball courts, (2) the "door stop was not sharp and edges were typical (slight ease with a 3/16" bevel) on the door," (3) the door was not sharp on the edge as determined by the door consultant, and (4) there were four ways to close the door: pull it by the window ledge (which Williams did several times), pull it by the spindle shaft, allow the players inside the court to close the door, or close the door the way appellant did. In his deposition, appellant admitted he could have asked Fisher and Flexner to close the door from the inside of the court.
 {¶ 7} In his memorandum in opposition to summary judgment, appellant argued that *Page 4 
(1) the YMCA violated R.C. 3781.06(A) (1 ); (2) such violation constituted negligence per se; (3) as a result, the open and obvious doctrine was inapplicable; and (4) even if the doctrine was applicable, the dangers were not open and obvious and the YMCA had notice of the defective condition. On June 26, 2006, the trial court rejected appellant's arguments and granted summary judgment to the YMCA.
 {¶ 8} Appellant appeals, raising one assignment of error:
 {¶ 9} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 10} Summary judgment is appropriate under Civ.R. 56(C) when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. Our standard of review on summary judgment is de novo. Jones v. Shelly Co. (1995), 106 Ohio App.3d 440.
 {¶ 11} To avoid summary judgment in a negligence action, a plaintiff must show that (1 ) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75,77. The existence of a duty is crucial to establishing a claim for negligence; without a duty, legal liability cannot exist. SeePozniak v. Recknagel, Lorain App. No. 03CA008320, 2004-Ohio-1753.
 {¶ 12} In the case at bar, appellant was a business invitee for all purposes pertinent to this appeal. An owner or occupier of premises owes a business invitee a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not *Page 5 
necessarily and unreasonably exposed to danger. Paschal v. Rite AidPharmacy, Inc. (1985), 18 Ohio St.3d 203. However, the owner or occupier is not an insurer of a business invitee's safety. Id. Thus, an owner or occupier of premises is under no duty to protect a business invitee from known dangers or dangers that are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them. Sidle v. Humphrey (1968), 13 Ohio St.3d 45, paragraph one of the syllabus.
 {¶ 13} The rationale behind the open and obvious doctrine is that the open and obvious nature of the hazard itself serves as a warning and allows the owner to reasonably expect others to discover the danger and take appropriate actions necessary to protect themselves. Simmers v.Bentley Constr. Co. (1992), 64 Ohio St.3d 642, 644. The doctrine concerns the first prong of a negligence claim — the existence of a duty. Souther v. Preble Cty. Dist. Library, West Elkton Branch, Preble App. No. CA2005-04-006, 2006-Ohio-1983, ¶ 36. When the danger is open and obvious, the owner or occupier owes no duty of care to individuals lawfully on the premises. Id. Open and obvious dangers are not concealed and are discoverable by ordinary inspection. Id. The dangerous condition at issue does not actually have to be observed by the claimant to be an open and obvious condition under the law. Id. Rather, the determinative issue is whether the condition is observable. Id.
 {¶ 14} Appellant first argues that (1) the YMCA violated R.C.3781.06(A)(1); (2) because R.C. 3781.06 was enacted to protect the public, a violation of the statute is negligence per se, therefore appellant has conclusively established that the YMCA breached its duty; and (3) as a result, the open and obvious doctrine is not applicable. In support of his argument, appellant cites Crawford v. Wolfe, Scioto App. No. 01CA2811, 2002-Ohio-6163 (because a finding of negligence per se equals a finding of duty and breach of such duty, the open and obvious doctrine does not apply), and Schell v. DuBois (1916), 94 Ohio St. 93
(the violation of a statute passed for the protection of the public is negligence per se). *Page 6 
 {¶ 15} R.C. 3781.06(A) (1 ) provides that "[a]ny building that may be used as a place of resort, * * * entertainment, * * * or occupancy by the public, * * * and all other buildings or parts and appurtenances of those buildings erected within this state, shall be so constructed, erected, equipped, and maintained that they shall be safe and sanitary for their intended use and occupancy."[1]
 {¶ 16} Violation of a statute will either be considered as evidence of negligence or support a finding of negligence per se. The distinction between the two depends upon the degree of specificity with which the particular duty is stated in the statute. Sikora v. Wenzel,88 Ohio St.3d 493, 496, 2000-Ohio-406. When a statutory violation constitutes negligence per se, "the plaintiff will be considered to have `conclusively established that the defendant breached the duty that he or she owed to the plaintiff.'" Id., quoting Chambers v. St. Mary'sSchool (1988), 82 Ohio St.3d 563, 565.
 {¶ 17} "Where there exists a legislative enactment commanding or prohibiting for the safety of others the doing of a specific act and there is a violation of such enactment * * *, such violation constitutes negligence per se." Eisenhuth v. Moneyhon (1954), 161 Ohio St. 367, 374. That is, where a statute sets forth "a positive and definite standard of care," "where the standard of care is thus fixed and absolute, it being the same under all circumstances, the failure to observe that requirement is clearly negligence per se." Id. But "where there exists a legislative enactment expressing for the safety of others, in general or abstract terms, a rule of conduct," that is, "where duties are undefined or defined only in abstract or general terms," negligence per se has no application. Id. See, also, Schell, *Page 7 94 Ohio St. at 107. In the latter situation, "a plaintiff proving that a defendant violated the statute must nevertheless prove each of the elements of negligence in order to prevail." Sikora,88 Ohio St.3d at 496.
 {¶ 18} In Sikora, the Ohio Supreme Court held that a violation of R.C.5321.04(A) (1 ) constituted negligence per se because the statute requirement that landlords conform to a particular standard of care, was fixed and absolute, the same under all circumstances, and stated with sufficient specificity. Id. at 498. R.C. 5321.04(A)(1) requires landlords to "[c]omply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety."
 {¶ 19} Upon reviewing R.C. 3781.06(A)(1), we find that unlike the statutory requirement at issue in Sikora, it only contains a general, abstract description of a duty for the safety of others. R.C.3781.06(A) (1 ) only imposes a general or abstract duty to provide safe and sanitary buildings for their intended use and occupancy, but it does not make any specific act or conduct violative of the statute. SeeLarson v. Cleveland Ry. Co. (1943), 142 Ohio St. 20. As a result, we find that a violation of R.C. 3781.06(A) (1 ) does not constitute negligence per se. It follows then that this case is not controlled byCrawford and that the open and obvious doctrine is applicable.
 {¶ 20} Appellant next argues that even if the open and obvious doctrine is applicable, the hazardous condition was not clearly open and obvious because (1 ) there was no way for appellant or anyone else to know how extremely sharp the edges of the door were, (2) the danger of crushing a finger is not obvious unless force is imposed, and (3) according to the door consultant, signage was required because the dangers of operating the door were not open and obvious. We disagree.
 {¶ 21} The trial court found that "[a] metal door with `extremely sharp' edges that did not have handles can be considered an `open and obvious' defect." We agree. As stated *Page 8 
earlier, open and obvious dangers are not concealed and are discoverable by ordinary inspection. Souther, 2006-Ohio-1983, at ¶ 36. The dangerous condition at issue does not actually have to be observed by the claimant to be an open and obvious condition under the law. Id. Rather, the determinative issue is whether the condition is observable. Id.
 {¶ 22} The alleged sharp edges of the door and the lack of a doorknob were neither hidden nor concealed. Rather, these conditions were observable and discoverable by an ordinary inspection. Indeed, appellant stated in his deposition that he noticed the lack of a doorknob on the outside of the door and that he "noticed [or might have noticed] that the edges [of the door] were extremely sharp in accordance with the other courts." These conditions were open and obvious hazards which appellant did in fact observe (or could have observed and discovered) before injuring his finger while closing the door. While appellant admitted he could have asked his friends to close the door from the inside of the court, since the door did not have a doorknob, he instead decided to close the door by wrapping his hand around the edge of the door with the intent of removing his hand at the last minute. The fact that appellant misjudged the speed at which to remove his fingers from the door is an unfortunate incident. However, the danger of catching his fingers in the door and injuring them in closing the door in that manner was an open and obvious condition. Finally, we find that the lack of signage on how to operate the door did not make the door unreasonably dangerous to the extent that would relieve appellant of his duty to discover the danger and take appropriate actions to protect himself.
 {¶ 23} We therefore find that no genuine issues of material fact exist regarding the open and obvious nature of the lack of doorknob and the sharp edges of the door. Reasonable minds could only conclude that those two conditions were open and obvious hazards which the YMCA may reasonably expect that appellant would discover and take appropriate action to protect himself. It follows that the open and obvious nature of those two *Page 9 
conditions alleviated the YMCA's duty to appellant, precluding liability for negligence. See Souther, 2006-Ohio-1983.
 {¶ 24} Finally, appellant argues that there are genuine issues of material fact as to whether the YMCA had actual or constructive notice of the defective conditions. Appellant also argues that the trial court erred by finding that even if the YMCA violated R.C. 3781.06, such violation was not the proximate cause of the injuries suffered by appellant. We find that the issues of notice and proximate cause are inapplicable. We have found above that the YMCA does not owe a duty to appellant regarding the conditions (because of the open and obvious nature of the conditions), thus the YMCA is not liable to appellant for negligence. Since the YMCA is not liable, its actual or constructive notice of the conditions and the issue of proximate cause are irrelevant for purposes of appellant's negligence claim. See Jenks v.Barberton, Summit App. No. 22300, 2005-Ohio-995.
 {¶ 25} In light of all of the foregoing, we find that the trial court did not err by granting summary judgment to the YMCA. Appellant's assignment of error is overruled.
 {¶ 26} Judgment affirmed.
BRESSLER and WALSH, JJ., concur.
[1] "`Safe,' with respect to a building, means it is free from danger or hazard to the life, safety, health, or welfare of persons occupying or frequenting it, or of the public and from danger of settlement, movement, disintegration, or collapse, whether such danger arises from the methods or materials of its construction or from equipment installed therein, for the purpose of lighting, heating, the transmission or utilization of electric current, or from its location or otherwise." R.C. 3781.06(C)(7). *Page 1