ROBERTS, Admr., et al., Appellants,

v.

RMB ENTERPRISES, INC., et al., Appellees, et al.

[Cite as *Roberts v. RMB Ents., Inc.*, 197 Ohio App.3d 435, 2011-Ohio-6223.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2011–03–060.

Decided Dec. 5, 2011.

438

Sams, Fischer, Packard & Schuessler, L.L.C., Dwight A. Packard II, Robert S. Fischer, and Theresa Nelson Ruck, for appellants Judy Roberts and Gregoria Guzman.

Ulmer & Berne L.L.P., James D. Houston, and Frederic X. Shadley, for appellee RMB Enterprises, Inc.

Gallagher Sharp, Todd M. Haemmerle, and Colleen Mountcastle, for appellees Bill and Don Bowling, Bryan Davis, and Bowling Transportation, Inc., and defendant, Joe Brown.

Stephen C. Lane, for appellee Diamond Trailers, Inc., and defendant Diamond Heavy Haul, Inc.

Droder & Miller, and Bradley Powell, for appellee Dempster Tire Sales, Inc.

Thomas L. Davis, for appellee AK Steel Corp.

Michael DeWine, Attorney General, and Robert Eskridge III, Assistant Attorney General, for Ohio Attorney General.

RINGLAND, Judge.

{¶ 1} Plaintiffs-appellants, Judy Roberts, administrator of the estate of Jonathan Roberts, and Gregoria Guzman, administrator of the estate of Rudolfo

Guzman, appeal from the Butler County Court of Common Pleas decision granting summary judgment to defendants-appellees, RMB Enterprises, Inc. ("RMB"), Bowling Transportation, Inc. ("BTI"), Diamond Trailers, Inc. ("DTI"), Dempster Tire Sales, Inc. ("DTS"), AK Steel Corp., Bill and Don Bowling, and Bryan Davis. Davis cross-appeals from the same decision. For the reasons outlined below, we affirm the trial court's decision.

{¶ 2} RMB, a business that is owned by Bill and Don Bowling and that incorporated in 1994 to operate a steel storage warehouse, contracted with AK Steel to provide it with intraplant hauling services at its Middletown facility. BTI, incorporated in 1986 to operate as an over-the-road steel hauler, is also owned by Bill and Don Bowling. BTI leases employees to RMB, its sister corporation, to provide the intraplant hauling services on behalf of RMB at the AK Steel facility. Appellants' decedents, Jonathan Roberts and Rudolfo Guzman, were BTI employees leased to RMB to provide services at the AK Steel facility.

{¶ 3} On the morning of March 3, 2007, Bryan Davis, the lead mechanic providing services for RMB, received word that one of RMB's trailers, a trailer that was designed by DTI and equipped with tires supplied by DTS, had several broken wheel bolts in need of repair. Upon moving the trailer to the warehouse, Guzman, an experienced tire mechanic, and Roberts, a mechanic's helper, attempted to remove the two-piece wheel-assembly unit so that they could fix the broken wheel bolts. However, because Guzman and Roberts failed to deflate the tire before removing the interior bolts securing the two-piece wheel-assembly unit to the axle hub, something which Davis explicitly told Guzman to do, the unit exploded, killing Guzman instantly and causing Roberts to suffer significant injuries.[1] As a result of this incident, appellants received workers' compensation benefits.

{¶ 4} Appellants filed suit against appellees, raising a number of claims, including, but not limited to, wrongful death and personal injury based on intentional tort and negligence, intentional infliction of emotional distress, and products liability. Appellants also sought to recover punitive damages. Appellees moved for summary judgment on all claims, which, after holding a hearing on the matter, the trial court granted.

{¶ 5} Appellants now appeal from the trial court's decision granting summary judgment to appellees, raising nine assignments of error for review. In addition, Bryan Davis, the lead mechanic, cross-appeals from the same decision, raising one assignment of error for review.

---

1. Roberts subsequently passed away on April 20, 2010, from an apparent drug overdose.

## Summary–Judgment Standard

{¶ 6} Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial. *Forste v. Oakview Const., Inc.*, Warren App. No. CA2009–05–054, 2009-Ohio-5516, 2009 WL 3350450, ¶ 7. On appeal, a trial court's decision granting summary judgment is reviewed de novo. *Touhey v. Ed's Tree & Turf, L.L.C.*, 194 Ohio App.3d 800, 2011-Ohio-3432, 958 N.E.2d 212, ¶ 7; *Creech v. Brock & Assoc. Constr.*, 183 Ohio App.3d 711, 2009-Ohio-3930, 918 N.E.2d 541, ¶ 9. In applying the de novo standard, a reviewing court is required to "us[e] the same standard that the trial court should have used, and * *·* examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Bravard v. Curran*, 155 Ohio App.3d 713, 2004-Ohio-181, 803 N.E.2d 846, ¶ 9, quoting *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 383, 701 N.E.2d 1023.

{¶ 7} A trial court may grant summary judgment only when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party. See Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46. The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264. Once this burden is met, the nonmoving party must then present evidence to show that there is some issue of material fact yet remaining for the trial court to resolve. *Smedley v. Discount Drug Mart, Inc.*, 190 Ohio App.3d 684, 2010-Ohio-5665, 943 N.E.2d 1078, ¶ 11. In order to meet this burden, the nonmoving party "may not rest on the mere allegations of his pleading, but [its] response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue." *Golden v. Milford Exempted Village School Dist. Bd. of Edn.*, Clermont App. No. CA2010–11–092, 2011-Ohio-5355, 2011 WL 4916588, ¶ 20, quoting *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197. In determining whether a genuine issue of material fact exists, the evidence must be construed in the nonmoving party's favor. *Walters v. Middletown Properties Co.*, Butler App. No. CA2001–10–249, 2002-Ohio-3730, 2002 WL 1625682, ¶ 10.

{¶ 8} We are mindful of this standard while addressing the following assignments of error.

## Assignment of Error No. 1

{¶ 9} "The trial court erred to the prejudice of appellants by granting the motion for summary judgment in favor of appellees RMB and BTI by misinter-

preting statutory and administrative laws governing professional employer organizations."

{¶ 10} In their first assignment of error, appellants argue that the trial court erred by granting summary judgment to RMB and BTI as it relates to their wrongful-death and personal-injury negligence claims. In support of their argument, appellants claim that the trial court "took an impermissible short cut through this case by finding the [professional employer-organization] laws are only applicable to companies that 'specialize' in the leasing of employees." According to appellants, had the trial court properly applied the statutory and administrative laws governing professional-employer organizations to the case at bar, RMB and BTI would not be entitled to workers' compensation immunity under R.C. 4123.74. This argument lacks merit.

{¶ 11} "When construing a statute, the paramount concern is the legislature's intent in enacting the statute." *Wilmington City School Dist. Bd. of Edn. v. Clinton Cty. Bd. of Commrs.* (2000), 141 Ohio App.3d 232, 239, 750 N.E.2d 1141, citing *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 340, 673 N.E.2d 1351. In order to determine the legislature's intent, the court must look to the statute itself, and "if such intent is clearly expressed therein, the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged." *State ex rel. McGraw v. Gorman* (1985), 17 Ohio St.3d 147, 149, 478 N.E.2d 770, quoting *Wachendorf v. Shaver* (1948), 149 Ohio St. 231, 78 N.E.2d 370, paragraph five of the syllabus. In turn, a court must "read words and phrases in context and construe them in accordance with rules of grammar and common usage." *Winkle v. Zettler Funeral Homes, Inc.*, 182 Ohio App.3d 195, 2009-Ohio-1724, 912 N.E.2d 151, ¶ 53, quoting *State ex rel. Russell v. Thornton*, 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶ 11. A court, however, "must keep in mind that a strong presumption exists against any construction which produces unreasonable or absurd consequences." *Burdge v. Kerasotes Showplace Theatres, L.L.C.*, Butler App. No. CA2006–02–023, 2006-Ohio-4560, 2006 WL 2535762, ¶ 34, citing *State ex rel. Belknap v. Lavelle* (1985), 18 Ohio St.3d 180, 181–182, 480 N.E.2d 758.

{¶ 12} The Ohio General Assembly passed Am.Sub.H.B. No. 183, 150 Ohio Laws, Part III, 4949, enacting R.C. Chapter 4125, effective November 5, 2004, requiring all "professional employer organizations," organizations that provide human-resources management, employee benefits, payroll, and workers' compensation services, to, among other things, register with the administrator of workers' compensation and comply with workers' compensation laws. See 94 Ohio Jurisprudence 3d (2011), Workers' Compensation, Section 75. "Professional employer organization," as defined by R.C. 4125.01(C), "means a sole proprietor, partnership, association, limited liability company, or corporation that enters into

an agreement with one or more client employers for the purpose of co-employing all or part of the client employer's workforce at the client employer's work site."

{¶ 13} As a review of the statutory language found in R.C. Chapter 4125 reveals, the word "professional," while defined in the context of the phrase "professional employer organization," is not independently defined by the Revised Code. Without the benefit of further clarification, we find ambiguity as it relates to what may constitute a *"professional* employer organization" as defined by R.C. 4125.01(C). For example, do these provisions apply to all employer organizations that enter into coemployment agreements regardless of their core business services, or only those that otherwise provide human-resource services? In turn, having found ambiguity as to the meaning of "professional," we must give the term its common and ordinary meaning unless the General Assembly has manifested a contrary legislative intent. See *Moore Personnel Serv., Inc. v. Zaino*, 98 Ohio St.3d 337, 2003-Ohio-1089, 784 N.E.2d 1178, ¶ 15 (when words are not defined in a statute, they are to be given their common and ordinary meaning, absent a contrary legislative intent).

{¶ 14} "Professional," as defined by Webster's Third New International Dictionary, means, among other things, one who belongs to an "occupation requiring a high level of training and proficiency." The common and ordinary meaning of the word "profession," the root of "professional," is "a calling requiring specialized knowledge and often long and intensive preparation." It follows, then, that in order to be considered a *"professional* employer organization," the employer organization must specialize in coemploying all or part of its client employer's workforce at the client employer's work site. Our interpretation of "professional," at least as it relates to the term "professional employer organization," is confirmed when one consults with the final bill analysis of Am.Sub.H.B. No. 183 as promulgated by the Legislative Service Commission, which states that the General Assembly merely intended for the provisions found in R.C. Chapter 4125 to apply to those "employers that *specialize* in 'leasing' employees to other employers."[2] (Emphasis added.) As noted above, when construing a statute, the paramount concern is the legislature's intent. Therefore, we find no error in the trial court's decision finding R.C. Chapter 4125 "was intended to apply to those agencies and companies that 'specialize' in the leasing of employees to 'client' re-employers."

---

**2.** The Ohio Supreme Court has established that legislative history, including Legislative Service Commission analyses, is an appropriate tool for courts to use in determining the legislature's intent. See *Cincinnati City School Dist. Bd. of Edn. v. State Bd. of Edn. of Ohio*, 176 Ohio App.3d 157, 2008-Ohio-1434, 891 N.E.2d 352, ¶ 26, citing *State ex rel. Triplett v. Ross*, 111 Ohio St.3d 231, 2006-Ohio-4705, 855 N.E.2d 1174, ¶ 48.

{¶ 15} It is undisputed that the sole purpose of BTI is to act as an over-the-road steel hauler.  BTI has never held itself out as an expert in human-resource management, employee benefits, payroll, or workers' compensation services, nor has it otherwise specialized in leasing its employees to client employers.  BTI was, and always has been, a corporation involved in the hauling of steel.  In turn, while it may be true that BTI did lease its employees to RMB, its sister corporation, to provide its services at the AK Steel facility, the record is clear that this arrangement was created solely for the purpose of convenience and consolidation.

{¶ 16} The trial court found, and we agree, that "it was not the intent of the legislature, when it passed HB 183, to make the statute applicable to a sister corporation, who does not specialize in leasing employees to other employers, and who, for purpose of convenience and consolidation of human resources functions, performs the human resource function of the sister company."  In turn, we find that BTI simply cannot be classified as a "professional employer organization" subject to the provisions found in R.C. Chapter 4125.  To hold otherwise would be contrary to the legislature's true intent and would produce unreasonable and absurd consequences under the facts and circumstances of this case.  This is particularly true considering that appellants had already received workers' compensation benefits resulting from this incident.  Therefore, because this court's paramount concern is the legislature's intent, the trial court did not err by granting summary judgment in favor of RMB and BTI as it relates to appellants' wrongful-death and personal-injury negligence claims, for both RMB and BTI were entitled to workers' compensation immunity under R.C. 4123.74.  Accordingly, appellants' first assignment of error is overruled.

### Assignment of Error No. 2

{¶ 17} "The trial court erred to the prejudice of appellants by granting the motion for summary judgment in favor of appellees RMB and BTI as a genuine issue of material fact exists precluding summary judgment on appellants' claims for intentional tort."

{¶ 18} In their second assignment of error, appellants argue that the trial court erred by granting summary judgment to RMB and BTI as it relates to their wrongful-death and personal-injury intentional-tort claims.  Appellants also argue that the trial court erred by granting summary judgment to RMB and BTI as it relates to their claims of intentional infliction of emotional distress.  We address each of appellants' claims separately.

### Wrongful–Death and Personal–Injury Intentional–Tort Claims

{¶ 19} As it relates to their wrongful-death and personal-injury intentional-tort claims, appellants argue that the trial court erred by granting summary judg-

ment to RMB and BTI, because a genuine issue of material fact remains as to their "actual and deliberate intent to cause injury." We disagree.

{¶ 20} Generally, "actions for injuries sustained in the course of employment must be addressed within the framework of Ohio's workers' compensation statutes." *Rijo v. Reading Rock, Inc.,* Butler App. No. CA2007–09–223, 2008-Ohio-3385, 2008 WL 2635523, ¶ 13, citing *Blankenship v. Cincinnati Milacron Chems., Inc.* (1982), 69 Ohio St.2d 608, 614, 433 N.E.2d 572. However, in limited circumstances, when an employer's conduct is sufficiently egregious to rise to the level of an intentional tort, an employee may institute an intentional-tort claim against his employer under R.C. 2745.01, Ohio's Employer Intentional Tort statute. See *Barton v. G.E. Baker Constr., Inc.,* Lorain App. No. 10CA009929, 2011-Ohio-5704, 2011 WL 5345400, ¶ 7; see also *Ferryman v. Conduit Pipe Prods. Co.,* Madison App. No. CA2007–02–007, 2007-Ohio-6417, 2007 WL 4225745, ¶ 6.

{¶ 21} Pursuant to R.C. 2745.01(A), an employer shall not be liable for damages resulting from an intentional tort committed by the employer during the course of employment "unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur." "Substantially certain," as defined by R.C. 2745.01(B), means that an "employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death." Acting with the belief that an injury is "substantially certain" to occur is not analogous to wanton misconduct, nor is it "enough to show that the employer was merely negligent, or even reckless." *Talik v. Fed. Marine Terminals, Inc.,* 117 Ohio St.3d 496, 2008-Ohio-937, 885 N.E.2d 204, ¶ 17; *Weimerskirch v. Coakley,* Franklin App. No. 07AP–952, 2008-Ohio-1681, 2008 WL 928396, ¶ 8. Instead, one may recover "for employer intentional torts only when an employer acts with specific intent to cause an injury." *Kaminski v. Metal Wire Prods. Co.,* 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 56; *Klaus v. United Equity, Inc.,* Allen App. No. 1–07–63, 2010-Ohio-3549, 2010 WL 2990956, ¶ 18.

{¶ 22} However, while generally requiring proof of an employer's specific intent to cause an injury, pursuant to R.C. 2745.01(C), the "[d]eliberate removal" by an employer of an "equipment safety guard" creates a rebuttable presumption that the removal "was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result." "Deliberate removal," while not defined by the Revised Code, has been interpreted to mean "a considered decision to take away or off, disable, bypass, or eliminate, or to render inoperable or unavailable for use." *Fickle v. Conversion Technologies Internatl., Inc.,* Williams App. No. WM–10–016, 2011-Ohio-2960, 2011 WL 2436750, ¶ 32. In addition, "equipment safety guard," another term not defined by the Revised

Code, has been interpreted to encompass "something more than an actual physical structure or barrier erected between the employee and the danger" as "a device that is designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment." *Id.* at ¶ 39–43; *Beary v. Larry Murphy Dump Truck Serv., Inc.*, Stark App. No. 2011–CA–00048, 2011-Ohio-4977, 2011 WL 4496655, ¶ 21–22; see also *Anders v. Pease Co.* (July 9, 1990), Butler App. No. CA89–11–156, 1990 WL 94240, at fn. 2 (holding "guard" as defined by Ohio Administrative Code to mean "the covering, fencing, railing, or enclosure which shields an object from accidental contact").

{¶ 23} Appellants initially argue that they are "entitled to a statutory presumption of intent under R.C. 2745.01(C) due to the removal of a safety guard." In support of their claim, appellants argue that because "the tire bead and bead taper on the rim were removed, directly contributing to the failure of the wheel assembly resulting in the explosion," a genuine issue of material fact remains whether RMB and BTI acted with the intent necessary to support their wrongful-death and personal-injury intentional-tort claims.

{¶ 24} However, after a thorough review of the record, not only do we find that the tire bead and bead taper do not constitute "equipment safety guards," we find the record devoid of any evidence indicating that RMB or BTI deliberately removed these alleged "safety features" from the wheel-assembly units. In fact, the trial court found, and we agree, that there is simply no evidence that RMB or BTI altered or modified the wheel-assembly unit in any way.

{¶ 25} Furthermore, while appellants claim that the removal of the tire bead and bead taper caused their injuries, the record clearly indicates that the direct and proximate cause of the explosion was not a result of the tire-bead and bead-taper removal, but instead was due solely to Guzman's and Roberts's failure to deflate the tire prior to servicing the wheel-assembly unit. In fact, as appellants' own expert witness testified, the "explosion doesn't occur" if the air had been let out of the tire. Therefore, the presumption of intent to injure as provided by R.C. 2745.01(C) is simply not applicable in this case.

{¶ 26} Despite this, appellants argue that the trial court's decision granting summary judgment to RMB and BTI was still improper because they provided "no safety equipment" and "absolutely no verifiable or consistent source of training, safety procedures, instructions, or warnings" regarding the apparent dangers involved when servicing the wheel-assembly unit. However, even if we were to agree with appellants' reading of the record, none of these alleged deficiencies creates a genuine issue of material fact whether RMB and BTI acted with a deliberate intent to injure. Instead, these alleged failures constitute, at best, recklessness, a standard that falls well short of that which is required to maintain appellants' wrongful-death and personal-injury intentional-tort claims.

See *Fickle*, 2011-Ohio-2960, 2011 WL 2436750, at ¶ 48 (finding failure to provide adequate training and safety devices not sufficient to establish deliberate intent to injure); *Jefferson v. Benjamin Steel Co., Inc.*, Richland App. Nos. 09 CA 62, 09 CA 75, 2010-Ohio-50, 2010 WL 60121, ¶ 112 (an employer's failure to follow proper safety procedures does not constitute intentional tort); see also *Davis v. AK Steel*, Butler App. No. CA2005-07-183, 2006-Ohio-596, 2006 WL 318661, ¶ 12 (failure to provide adequate safety devices and training does not constitute substantial certainty even under the less stringent common-law standards). Therefore, because appellants cannot show that RMB or BTI acted with a deliberate intent to injure, we find no error in the trial court's decision granting summary judgment to RMB and BTI as it relates to appellants' wrongful-death and personal-injury intentional-tort claims.

### Intentional Infliction of Emotional Distress

{¶ 27} Regarding their intentional-infliction-of-emotional-distress claims, appellants argue that the trial court erred in granting summary judgment to RMB and BTI, by "misapplying the standard set forth in R.C. 2745.01[D]" and by finding that no genuine issue of material fact remained as to whether they "engaged in extreme and outrageous conduct" by "ordering" appellants to service the wheel-assembly unit without "proper training, procedures, equipment or supervision." However, even assuming that appellants are correct in their claim that the trial court misapplied R.C. 2745.01(D), their intentional-infliction-of-emotional-distress claims still fail, for the record is simply devoid of any evidence even remotely indicating that RMB and BTI acted in an extreme and outrageous manner intending to cause emotional distress. *Curry v. Blanchester*, Clinton App. Nos. CA2009-08-010, CA2009-08-012, 2010-Ohio-3368, 2010 WL 2807948, ¶ 52, citing *Garrison v. Bobbitt* (1999), 134 Ohio App.3d 373, 378-379, 731 N.E.2d 216 (reiterating that intentional-infliction-of-emotional-distress claim requires showing of "extreme and outrageous" conduct). In fact, as the trial court found, and with which we certainly agree, "[t]here are no facts supplied by [appellants] from which a reasonable trier of facts could conclude that [RMB and BTI's] conduct was 'extreme and outrageous,' much less that it transcended 'all possible bounds of decency.'" Therefore, because appellants cannot show that RMB and BTI acted in an extreme and outrageous manner as a matter of law, we find no error in the trial court's decision granting RMB and BTI summary judgment on appellants' intentional-infliction-of-emotional-distress claims.

{¶ 28} In light of the foregoing, because we find that no genuine issue of material fact remains as it relates to appellants' wrongful-death and personal-injury intentional-tort claims against RMB and BTI, nor any genuine issue of material fact as it relates to their claims of intentional infliction of emotional distress, appellant's second assignment of error is overruled.

Assignment of Error No. 3

{¶ 29} "The trial court erred to the prejudice of appellants by granting the motion for summary judgment in favor of appellee Davis as a genuine issue of material fact exists as to his negligence."

{¶ 30} In their third assignment of error, appellants argue that the trial court erred by granting summary judgment to Bryan Davis, Guzman's and Roberts's alleged supervisor, as it relates to their claims of negligence. In support of this claim, appellants argue that a "jury should hear and decide for themselves whether the lack of training, lack of warnings, lack of instruction, lack of supervision and lack of safety were a proximate cause" of their injuries. We disagree.

{¶ 31} Generally, in order to avoid summary judgment as it relates to their claim of negligence, appellants must show that (1) Davis owed Guzman and Roberts a duty of care, (2) Davis breached that duty of care, and (3) as a direct and proximate result of Davis's breach, they suffered injury. *Rigdon v. Great Miami Valley YMCA,* Butler App. No. CA2006–06–155, 2007-Ohio-1648, 2007 WL 1041432, ¶ 11; *Ahmad v. AK Steel Corp.,* Butler App. No. CA2006–04–089, 2006-Ohio-7031, 2006 WL 3833873, ¶ 6; *Robinson v. Bates,* 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195, ¶ 21. Proximate cause "is that which in a natural and continued sequence contributes to produce the result, without which it would not have happened." *Barnett v. Carr ex rel. Estate of Carr* (Sept. 17, 2001), Butler App. No. CA2000–11–219, at 20, 2001 WL 1078980, quoting *Kemerer v. Antwerp Bd. of Edn.* (1995), 105 Ohio App.3d 792, 796, 664 N.E.2d 1380. Appellants' failure to prove any one of these elements would be fatal to their claim of negligence. *Whiting v. Ohio Dept. of Mental Health* (2001), 141 Ohio App.3d 198, 202, 750 N.E.2d 644.

{¶ 32} In this case, it is undisputed that Davis told Guzman to deflate the tire before he and Roberts began servicing the wheel-assembly unit. As Davis testified, "[T]he last thing I told [Guzman] before I walked out was to let the air out of the tire." It is also undisputed that Guzman had worked on this type of wheel-assembly unit in the past and had even instructed other employees to deflate the tires before beginning any repairs. In addition, the record is clear that the explosion was due solely to Guzman's and Roberts's failure to deflate the tire before servicing the wheel-assembly unit. In fact, as noted previously, appellants' own expert witness testified that the "explosion doesn't occur" if the air had been let out of the tire. In turn, even when construing the evidence in appellants' favor, we find no genuine issue of material fact to support appellants' claims that Davis's alleged negligence was the direct and proximate cause of their injuries. Therefore, because we find that no genuine issue of material fact

remains as it relates to appellants' claims of negligence levied against Davis, appellant's third assignment of error is overruled.

## Assignment of Error No. 4

{¶ 33} "The trial court erred to the prejudice of appellants by granting the motion for summary judgment in favor of appellees Bill Bowling and Don Bowling as a genuine issue of material fact exists as to their personal liability."

{¶ 34} In their fourth assignment of error, appellants argue that the trial court erred by granting summary judgment to Bill and Don Bowling, the president and vice-president of RMB and BTI, as it relates to their claims of negligence. In support of this claim, appellants argue that granting summary judgment to Bill and Don Bowling was improper because a genuine issue of material fact remains as to whether they can be held personally liable for their injuries because of the "utter failure to provide training on these wheel assemblies." We disagree.

{¶ 35} As this court has stated previously, "a corporate officer can be held personally liable for tortious acts he or she has committed and, under such circumstances, a plaintiff need not pierce the corporate veil to hold individuals liable who have personally committed such acts." *Mohme v. Deaton,* Warren App. No. CA2005–12–133, 2006-Ohio-7042, 2006 WL 3833923, ¶ 9; *Tucker v. Huff,* Harrison App. No. 07–HA–7, 2008-Ohio-3239, 2008 WL 2587054, ¶ 46. A corporate officer, however, "may not be held liable merely by virtue of his status as a corporate officer." *Mohme* at ¶ 28. Rather, "[t]he true basis of liability is the officer's violation of some duty owed to the third person which injures such third person." *Krieger Ford, Inc. v. Chase Motors, Inc.* (Aug. 3, 1999), Franklin App. No. 98AP–982, 1999 WL 561693, at *8. In other words, the evidence presented must indicate that the corporate officer "specifically directed the particular act to be done, or participated, or co-operated therein." (Emphasis omitted.) *Young v. Featherstone Motors, Inc.* (1954), 97 Ohio App. 158, 171, 124 N.E.2d 158.

{¶ 36} In this case, after a thorough review of the record, we agree with the trial court's decision finding the record devoid of any evidence indicating that Bill and Don Bowling "took part in the commission of the act which caused the accident, nor did they specifically direct the particular act to be done." Furthermore, even if we were to agree with appellants' claim that Bill and Don Bowling failed to provide proper training regarding the wheel-assembly units, the record clearly indicates that Davis, the decedents' alleged supervisor, told Guzman, an experienced tire mechanic who had worked on this type of wheel-assembly unit in the past, to deflate the tire before beginning the repairs. As noted previously, it was Guzman's and Roberts's failure to deflate the tire prior to servicing the wheel-assembly unit that caused the explosion. Therefore, we find no error in

the trial court's decision granting summary judgment to Bill and Don Bowling as it relates to appellants' negligence claims.  Accordingly, appellant's fourth assignment of error is overruled.

## Assignment of Error No. 5

{¶ 37} "The trial court erred to the prejudice of appellants by granting the motion for summary judgment of [DTI] as genuine issues of material fact exists on all of appellants' product liability claims."

{¶ 38} In their fifth assignment of error, appellants argue that the trial court erred by granting summary judgment to DTI as it relates to their product-liability claims.  In support of their claim, appellants argue that the wheel-assembly units found on the trailer designed by DTI contained a design defect "and the defective design was a proximate cause of the explosion."  We disagree.

{¶ 39} In any product-liability case, whether based in common law or statute, a plaintiff must prove that the alleged defective product proximately caused his injury.  *Eastman v. Stanley Works,* 180 Ohio App.3d 844, 2009-Ohio-634, 907 N.E.2d 768, ¶ 40, citing *State Farm Fire & Cas. Co. v. Chrysler Corp.* (1988), 37 Ohio St.3d 1, 523 N.E.2d 489. As noted above, proximate cause is " 'that which in a natural and continued sequence contributes to produce the result, without which it would not have happened.' " *Boettcher v. Gradall Co.,* Butler App. No. CA2008–02–051, 2008-Ohio-5664, 2008 WL 4767091, ¶ 13, quoting *Skerl v. Arrow International Inc.* (N.D.Ohio 2001), 202 F.Supp.2d 748, 755.  While cause is ordinarily a question of fact for the jury, " 'where no facts are alleged justifying any reasonable inference that the acts or failure of the defendant constitute the proximate cause of the injury, there is nothing for the jury [to decide], and, as a matter of law, judgment must be given for the defendant.' " *Aldridge v. Reckart Equip. Co.* (Sept. 19, 2006), Gallia App. No. 04CA17, 2006-Ohio-4964, 2006 WL 2716696, ¶ 79, quoting *Case v. Miami Chevrolet Co.* (1930), 38 Ohio App. 41, 45–46, 175 N.E. 224.

{¶ 40} In this case, just as the trial court found, and with which we agree, the record is "totally devoid of any evidence that any defect may have existed in the trailers when they were manufactured by [DTI] or that any breach of duties committed by [DTI], under the Ohio Products Liability Act, was the proximate cause" of appellants' injuries.  Instead, as we have previously stated, all the evidence presented in this matter makes it clear that the explosion occurred solely because Guzman and Roberts failed to deflate the tire before they began servicing the wheel-assembly unit.  Therefore, we find no error in the trial court's decision granting summary judgment to DTI as it relates to appellants'

product-liability claims. Accordingly, appellants' fifth assignment of error is overruled.

Assignment of Error No. 6

{¶ 41} "The trial court erred to the prejudice of appellants by granting the motion for summary judgment in favor of appellee Dempster by failing to recognize the duty Dempster owed to appellants."

{¶ 42} In their sixth assignment of error, appellants argue that the trial court erred by granting summary judgment to DTS as it relates to their product-liability and negligence claims. However, as we have repeatedly stated, all the evidence presented in this matter makes it clear that the explosion occurred solely because Guzman and Roberts failed to deflate the tire before they began servicing the wheel-assembly unit. Furthermore, there is no evidence that DTS designed, manufactured, sold, or distributed the wheel-assembly unit or any evidence that the tires supplied to RMB used on the wheel-assembly unit were defective. Therefore, we find no error in the trial court's decision granting summary judgment to DTS as it relates to appellants' product-liability and negligence claims. Accordingly, appellants' sixth assignment of error is overruled.

Assignment of Error No. 7

{¶ 43} "The trial court erred to the prejudice of appellants by granting the motion for summary judgment in favor of appellee AK Steel as a genuine issue of material fact exists as to AK Steel's duty to Guzman and Roberts and breach thereof."

{¶ 44} In their seventh assignment of error, appellants argue that the trial court erred by granting summary judgment to AK Steel as it relates to their premises-liability negligence claims. In support of this claim, appellants argue that AK Steel owed them a heightened duty based on its "superior knowledge" and "active participation" in RMB's activities within its facility. However, regardless of the duty owed, appellants were still required to show AK Steel's alleged negligence was the proximate cause of their injuries. See *Moore v. Eastgate Seafood, Inc.* (May 10, 1999), Clermont App. No. CA98–11–102, at 8, 1999 WL 296775, citing *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (finding it well settled that in order to establish a premises-liability negligence claim, one must show "the existence of a duty, a breach of that duty, causation, and damages"). Again, all the evidence presented in this matter makes it clear that the explosion occurred solely because Guzman and Roberts failed to deflate the tire before they began servicing the wheel-assembly unit. Therefore, we find no error in the trial court's decision granting summary

judgment to AK Steel as it relates to appellants' premises-liability negligence claims. Accordingly, appellant's seventh assignment of error is overruled.

## Assignment of Error No. 8

{¶ 45} "The trial court erred to the prejudice of appellants by finding Rodolfo Guzman's actions were the sole proximate cause of the explosion and thereby granting the motions for summary judgment in favor of appellees."

{¶ 46} In their eighth assignment of error, appellants argue that the trial court "erroneously weighed evidence" by finding the explosion occurred solely because Guzman and Roberts failed to deflate the tire before they began servicing the wheel-assembly unit. However, as we previously stated in appellants' third, fourth, fifth, sixth, and seventh assignments of error, all the evidence presented in this matter makes it clear that the explosion occurred solely because Guzman and Roberts failed to deflate the tire before they began servicing the wheel-assembly unit. While appellants claim otherwise, we find that the trial court did not erroneously weigh the evidence to reach this conclusion. This is particularly true when reviewing appellants' own expert testimony, which, as noted above, indicates that the "explosion doesn't occur" if the air had been let out of the tire. Therefore, appellants' eighth assignment of error is overruled.

## Assignment of Error No. 9

{¶ 47} "The trial court erred to the prejudice of appellants by granting appellees' motions for summary judgment on appellants' claims for punitive damages."

{¶ 48} In their ninth assignment of error, appellants argue that the trial court erred by dismissing their claims for punitive damages. However, "[i]t is well established that a claim for punitive damages cannot exist independently of the underlying cause of action for which it is sought." *Kill v. CSX Transp.*, 185 Ohio App.3d 291, 2009-Ohio-6871, 923 N.E.2d 1199, ¶ 44; *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 649, 635 N.E.2d 331. Therefore, because the trial court properly dismissed all claims advanced by appellants, their additional claim seeking punitive damages also fails. See, e.g., *Watson v. Ford Motor Co.*, Erie App. No. E–06–074, 2007-Ohio-6374, 2007 WL 4216975, ¶ 74. Accordingly, appellant's ninth assignment of error is overruled.

## Bryan Davis's Cross–Assignment of Error No. 1

{¶ 49} "The trial court erred in failing to apply workers' compensation immunity in favor of Davis."

{¶ 50} In his single cross-assignment of error, Davis argues that the trial court erred by finding he was not "entitled to immunity under the fellow servant rule." Based on our findings under appellants' third assignment of error, we find this argument moot.  See App.R. 12(A)(1)(c).

Judgment affirmed.

POWELL, P.J., and HENDRICKSON, J., concur.