[Cite as *BWIP Recreation Owner, L.L.C. v. Applewood Village Condominium Assn., Inc.*, 2016-Ohio-1430.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

BWIP RECREATION OWNER, LLC,          :

     Appellee,          :

    - vs -          :

APPLEWOOD VILLAGE CONDOMINIUM          :
ASSOCIATION, INC., et al.,

     Appellants.          :

CASE NO. CA2015-07-141

O P I N I O N
4/4/2016

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2014-01-0050

Roetzel & Andress, LPA, John J. Rutter and Zachary D. Prendergast, 250 East Fifth Street, Suite 310, Cincinnati, Ohio 45202, for appellee

Brandabur & Bowling Co., LPA, Kyle M. Rapier, 315 Monument Avenue, Hamilton, Ohio 45011, for appellant, Applewood Village Condominium Association, Inc.

Rex Wolfgang, 246 High Street, Hamilton, Ohio 45011, for appellants, English Meadows Condominium Association, Inc., Quail Meadows Condominium Association, Inc., and Twin Lakes Homeowners' Association

**S. POWELL, J.**

{¶ 1} Defendants-appellants, Applewood Village Condominium Association, Inc.

("Applewood Village"), English Meadows Condominium Association, Inc. ("English

Meadows"), Quail Meadows Condominium Association, Inc. ("Quail Meadows"), and Twin Lakes Homeowners' Association ("Twin Lakes"), appeal from the decision of the Butler County Court of Common Pleas granting summary judgment to plaintiff-appellee, BWIP Recreation Owner, LLC ("BWIP"), in an action for breach of contract. For the reasons outlined below, we affirm.

### Facts and Procedural History

{¶ 2} As the trial court noted, the parties to this action have a long and litigious history that stems from an agreement initially entered into in 1991 for the use of recreational facilities now owned by BWIP. This includes previous litigation regarding that same agreement, thereby rendering the material facts generally not in dispute. Those undisputed facts are as follows.

### The Agreement

{¶ 3} The recreational facilities at issue were developed in 1973 by Wildwood Management, Inc. ("Wildwood Management"), a wholly owned subsidiary of Towne Properties, Inc. ("Towne Properties"), on a portion of land located in Fairfield, Butler County, Ohio. The recreational facilities consist of two buildings available for social events and meetings, as well as a swimming pool and tennis courts. The property is also home to numerous condominium units that have been grouped into several separate condominium associations, including Applewood Village, Quail Meadows, Twin Lakes, and English Meadows' predecessor, Wellington Green Condominium Unit Owners' Association ("Wellington Green"). During its ownership of the recreational facilities, Wildwood Management entered into separate "easement agreements" with the respective associations that granted the individual residents of those associations the right to utilize the recreational facilities in exchange for a fee. These "easements" were then recorded in the Butler County Recorder's Office.

{¶ 4}  Sometime after entering into these agreements, Wildwood Management conveyed the recreation facilities to another subsidiary of Towne Properties, Wildwood Recreational Facilities, LLC ("Wildwood Recreational").  Subsequently, on January 1, 1991, Wildwood Recreational entered into an agreement with Applewood Village, Quail Meadows, Twin Lakes, and Wellington Green, among others, to modify the prior "easement agreements" that each had entered into with Wildwood Management.  This new agreement provided for the use of the recreational facilities by the individual residence owners in each association in exchange for the payment of a $15 monthly fee per residence.  The agreement also provided, in pertinent part, the following:

> Section 4.7.  Successors and Assigns.
>
> This Agreement and the obligations of the parties concerned shall bind the property of the Grantor and inure to the benefit of the parties and their respective successors and assigns, and shall continue in full force and effect for a term of ten (10) years from the date on which this Agreement is recorded in the Recorders Office's (sic) of Butler County, Ohio.  Thereafter this Agreement shall automatically [be] renewed for successive ten (10) year periods unless amended or terminated by the parties or their respective successors and assigns.

{¶ 5}  The agreement was then recorded with the Butler County Recorder's Office on February 4, 1992.  The agreement was subsequently extended, by default, for another ten year period beginning on February 4, 2002 after attempts to modify the terms of the agreement were unsuccessful.

**The Litigation**

{¶ 6}  On April 12, 2002, Wildwood Recreational notified the various associations that it intended to sell the recreational facilities to Connor & Murphy, Ltd. ("Connor & Murphy").  Shortly after receiving this notice, all of the associations stopped paying their required monthly user fees.  Connor & Murphy then closed on the property on January 29, 2003, and on April 7, 2004, filed suit against the associations to collect the delinquent fees.  Following a

lengthy legal battle, which included the filing of numerous motions for summary judgment, the matter was eventually tried to the bench. After taking the matter under advisement, the trial court issued a decision on August 3, 2007 that it then incorporated into a final judgment entry on August 27, 2007 finding in favor of Connor & Murphy and awarding it a money judgment for the unpaid assessments against the associations, including Applewood Village, Quail Meadows, Twin Lakes, and Wellington Green. The associations then appealed.

**The Appeal**

{¶ 7} On March 30, 2009, this court issued a decision in *Connor & Murphy, Ltd. v. Applewood Village Homeowners' Assn.*, 12th Dist. Butler No. CA2007-09-213, 2009-Ohio-1447, that addressed the validity and enforceability of the disputed agreement, finding the agreement was a "whole and complete contract binding all the parties thereto."[1] *Id.* at ¶ 50. In so holding, this court stated, in pertinent part:

> The 1991 Agreement sets forth the parties, the terms, and the consideration. In short, as previously stated, it permits the residents of the Association members to utilize the recreational facilities in exchange for a fee. The Agreement also imposes, upon Connor, the obligations of providing insurance and maintenance for the facilities. Although the Agreement states that it is intended to modify the prior easements executed by the Associations, it also specifically states that it is controlling with regard to any conflict between it and the easements. Simply put, regardless of whether it claims to modify the underlying easements, this Agreement sets forth all terms, and contains all elements, necessary to create a valid, binding contract. Therefore, we cannot say that the trial court erred in determining that the 1991 Agreement is legal and binding in its own right and without regard to the validity of any prior easements.

*Id.* at ¶ 53.

{¶ 8} This court further determined that the agreement did not constitute an easement, but was actually a license to the members of the various associations for the use

---

1. This court's decision was authored by a panel of judges from the Second District Court of Appeals, sitting by assignment of the Chief Justice of Ohio, pursuant to Section 5(A)(3), Article IV, of the Ohio Constitution.

of the recreational facilities in exchange for a fee. *Id.* at ¶ 67 and 69. As this court stated, "[s]hould the Associations fail to pay the requisite fee, the privilege of utilizing the recreational facilities can be suspended[.]" *Id.* at 68. It is undisputed that no appeal was taken from this decision.

### The Fall of Wellington Green and the Rise of English Meadows

{¶ 9} While the appeal was pending, on January 2, 2008, the owners of Wellington Green terminated that association and contemporaneously established a new condominium association, English Meadows. Wellington Green, therefore, never paid on the money judgment rendered against it by the trial court on August 27, 2007 and subsequently affirmed by this court on March 30, 2009. As a result, on February 22, 2012, the Connor Group, a Real Estate Investment Firm, LLC ("Connor Group"), the successor to Connor & Murphy, filed suit against Wellington Green, English Meadows, and the 41 individual condominium owners, seeking to collect upon that money judgment based on a theory of successor liability.

{¶ 10} On August 31, 2012, the trial court issued a decision finding English Meadows could not be held liable under the successor liability doctrine as a matter of law. *The Connor Group, a Real Estate Investment Firm, LLC v. Wellington Green Condominium Unit Owners Assn.*, Butler C.P. No. CV2012 02 0718 (Aug. 31, 2012). In so holding, the trial court stated:

> Application of the successor liability doctrine to this case initially requires a finding that English Meadows purchased all or substantially all of Wellington Green's assets. Plaintiffs did not allege such a purchase in their complaint, and have not addressed this requirement in their memorandum. Indeed, there is no evidence whatever in the record that English Meadows "purchased" anything from Wellington Green. This court has conducted substantial research on this issue and has uncovered no case where the doctrine of successor liability was applied outside the context of an acquisition of all or substantially all of the assets by the alleged successor. Because that did not occur here, plaintiffs' claim for successor liability must fail.

Continuing, albeit in dicta, the trial court then stated that "[i]f the doctrine did apply, the court

would agree that English Meadows is liable as a successor to Wellington Green because the 'mere continuation' exception to non-liability applies." It is undisputed that no appeal was taken from this decision.

**The Litigation Returns**

{¶ 11} On January 29, 2013, BWIP purchased the recreational facilities from Connor Group, a transaction that once again prompted the various associations to stop paying their required monthly user fees. Approximately one year later, on January 6, 2014, BWIP filed suit against Applewood Village, Quail Meadows, and Twin Lakes to collect the unpaid assessments alleging a breach of contract. In response, Applewood Village, Quail Meadows, and Twin Lakes, all of whom were original signatories to the agreement, claimed they were not liable for the unpaid assessment since a license is not assignable, thereby rendering the agreement void upon BWIP's purchase. BWIP also filed suit against English Meadows, who admitted in its answer to being a "successor association" to Wellington Green, seeking to collect the unpaid assessments it had not paid to BWIP after BWIP purchased the recreational facilities. The parties then filed competing motions for summary judgment.

{¶ 12} On April 21, 2015 and July 2, 2015, the trial court issued two separate decisions that collectively granted summary judgment to BWIP. In reaching this decision, the trial court found Applewood Village, Quail Meadows, and Twin Lakes were still bound by the agreement even after BWIP's purchase since the agreement entered into by the parties was a valid contract that established an assignable license that was intended to bind their successors and assigns. In addition, as it relates to BWIP's claims against English Meadows, the trial court found English Meadows made a judicial admission in its answer that it was a "successor association" to Wellington Green, thereby also rendering it liable to BWIP under the agreement for the unpaid assessments it had not paid to BWIP after BWIP purchased the recreational facilities.

{¶ 13} Applewood Village, English Meadows, Quail Meadows, and Twin Lakes now appeal from the trial court's decision granting summary judgment to BWIP, raising three assignments of error for review.

**Summary Judgment Standard of Review**

{¶ 14} Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial. *Roberts v. RMB Ents., Inc.*, 197 Ohio App.3d 435, 2011-Ohio-6223, ¶ 6 (12th Dist.). On appeal, a trial court's decision granting summary judgment is reviewed de novo. *Moody v. Pilot Travel Ctrs., L.L.C.*, 12th Dist. Butler No. CA2011-07-141, 2012-Ohio-1478, ¶ 7, citing *Burgess v. Tackas*, 125 Ohio App.3d 294, 296 (8th Dist.1998). In applying the de novo standard, the appellate court is required to "'us[e] the same standard that the trial court should have used, and * * * examine the evidence to determine whether as a matter of law no genuine issues exist for trial.'" *Bravard v. Curran*, 155 Ohio App.3d 713, 2004-Ohio-181, ¶ 9 (12th Dist.), quoting *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383 (8th Dist.1997).

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE TRIAL COURT ERRED WHEN IT INTERPRETED THE ASSIGNMENT LANGUAGE IN FINDING THE CONTRACT IN QUESTION WAS A TRANSFERABLE LICENSE.

{¶ 17} Assignment of Error No. 2:

{¶ 18} THE TRIAL COURT ERRED WHEN IT FOUND THAT A LICENSE THAT IS NOT COUPLED WITH AN INTEREST CAN BE TRANSFERRED.

{¶ 19} In the first and second assignments of error, the associations argue the trial court erred by granting summary judgment to BWIP upon finding the disputed agreement was a valid contract that established an assignable license. The trial court's decision,

however, properly complies with this court's holding in *Connor & Murphy, Ltd. v. Applewood Village Homeowners' Assn.*, 12th Dist. Butler No. CA2007-09-213, 2009-Ohio-1447. We stand by the analysis employed in reaching that decision and decline the associations' invitation to reconsider this court's decision on the matter. We also decline the associations' alternative request to treat that decision as an "amendment to the agreement," thereby eliminating the automatic renewal provision contained in Section 4.7 of the agreement. In reaching this decision, we reiterate that no appeal was ever taken from that decision, a decision that has now served as the law of the case for over seven years. Accordingly, finding no error in the trial court's decision, the first and second assignments of error are overruled.

{¶ 20} Assignment of Error No. 3:

{¶ 21} THE TRIAL COURT ERRED WHEN IT FOUND THAT THE CLAIMS AGAINST ENGLISH MEADOWS ARE NOT BARRED BY COLLATERAL ESTOPPEL AND RES JUDICATA.

{¶ 22} In the third assignment of error, English Meadows argues the trial court erred by finding BWIP's claims against it were not barred by collateral estoppel and res judicata when considering the trial court's earlier decision in *The Connor Group, a Real Estate Investment Firm, LLC v. Wellington Green Condominium Unit Owners Assn.*, Butler C.P. No. CV2012 02 0718 (Aug. 31, 2012).

{¶ 23} However, as a simple review of the record reveals, that case dealt with the issue of whether Connor Group could hold English Meadows liable under the successor liability doctrine in order to collect upon the money judgment rendered against its predecessor, Wellington Green. On the other hand, this case deals with the issue of whether BWIP could collect unpaid assessments from English Meadows that English Meadows had not paid to BWIP after BWIP purchased the recreational facilities. These are two separate

issues relating to two separate claims for which neither collateral estoppel nor res judicata would apply.

{¶ 24} Moreover, contrary to English Meadows' claim otherwise, simply because the trial court previously determined that the successor liability doctrine did not apply to English Meadows as a matter of law does not mean English Meadows was not a "successor" to Wellington Green as that term is used within Section 4.7 of the agreement. Again, as that section specifically states, the agreement shall "bind the property" and "inure to the benefit of the parties and their respective successors and assigns[.]" A "successor," as defined by Black's Law Dictionary (10th Ed.2014), is defined as "[s]omeone who succeeds to the office, rights, responsibilities, or place of another; one who replaces or follows a predecessor." Therefore, because English Meadows admitted to being a "successor association" to Wellington Green in its answer to BWIP's complaint, we find no error in the trial court's decision awarding summary judgment to BWIP. Accordingly, the third assignment of error is also overruled.

{¶ 25} Judgment affirmed.

PIPER, P.J., and HENDRICKSON, J., concur.